Commonwealth *v.* One 2004 Audi Sedan Automobile.

COMMONWEALTH *vs.* ONE 2004 AUDI SEDAN AUTOMOBILE
& others.[1]

Norfolk. October 6, 2009. - February 9, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Forfeiture Proceeding. Personal Property,* Property seized at time of arrest.
*Motor Vehicle,* Forfeiture. *Practice, Civil,* Forfeiture proceeding, Motion to
dismiss.

This court concluded that a civil forfeiture complaint under G. L. c. 94C,
§ 47 (*d*), will survive a motion to dismiss if the Commonwealth pleads
facts sufficient to support a reasonable belief that, at trial, the Commonwealth
can show probable cause to believe the property at issue is subject to
forfeiture [36-43]; moreover, this court concluded that where the Com-
monwealth, pursuant to G. L. c. 94C, § 47 (*f*) (1), has obtained an ex parte
preliminary order to seize or secure property pending final adjudication of
the forfeiture proceeding, a person claiming ownership of the property may
file a motion and memorandum, supported by affidavits, to vacate the
order by demonstrating that the evidence in the Commonwealth's affidavits
in support of its ex parte motion, even if true, was legally insufficient to
justify a finding of probable cause; by showing that material facts in the
Commonwealth's affidavits were inaccurate; or by providing additional
information that, had it been before the judge at the time of the Com-
monwealth's motion, would have demonstrated a lack of probable cause to
seize [43-46].
A Superior Court judge erred in granting the intervener's motion to dismiss a
civil forfeiture complaint directed at the intervener's bank account, where,
drawing all reasonable inferences in the Commonwealth's favor, and
incorporating in the Commonwealth's complaint particularized allegations
from two police officers' affidavits, the Commonwealth alleged facts that
supported a reasonable belief that it had probable cause to initiate the
forfeiture action based on the claim that the funds in the bank account
were proceeds of the intervener's illegal steroid transactions, were intended
to be used to purchase illegal steroids, or were intended to be used to
facilitate the purchase or sale of illegal steroids. [46-51]

CIVIL ACTION commenced in the Superior Court Department on
February 24, 2006.

A motion to dismiss was heard by *Kenneth J. Fishman*, J.

An application for leave to file an interlocutory appeal was

[1]Four thousand three hundred fifty-nine dollars in United States currency
and two hundred twenty-six thousand five hundred eleven dollars and ninety-
two cents in a Bank of America bank account; Bruce Kneller, intervener.

allowed by *Barbara A. Lenk*, J., in the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Susanne M. O'Neil*, Special Assistant District Attorney, for the Commonwealth.

*Edward H. Sharkansky* (*Dana Alan Curhan* with him) for the intervener.

GANTS, J. On February 17, 2006, State police officers arrested Bruce Kneller and charged him with possession of a class E substance with intent to distribute, G. L. c. 94C, § 32D (*a*). At the time of arrest, the police seized Kneller's 2004 Audi Sedan automobile and $4,359 in United States currency. The following day the police obtained and executed a search warrant at a Bank of America branch in Randolph, where Kneller had an account. As a result of the search, funds held in Kneller's account, which had a balance of $226,511.92, were temporarily frozen. On February 24, 2006, the Commonwealth brought this civil forfeiture action under G. L. c. 94C, § 47 (*a*) (3), (5), and (*d*), alleging that the Audi sedan, currency, and frozen bank account funds were related to Kneller's Internet-based illegal steroid distribution operation. At the same time, the Commonwealth also moved ex parte under G. L. c. 94C, § 47 (*f*) (1), for a preliminary order to secure the frozen funds pending final adjudication. This order was granted on February 27, 2006.

On March 21, 2006, the judge allowed Kneller's motion to intervene; Kneller filed an answer to the Commonwealth's complaint and moved to stay the proceedings. The motion to stay was allowed on May 16, 2006. On February 14, 2007, Kneller moved to dismiss the complaint only as to forfeiture of the bank account funds. After a hearing, the judge on May 1, 2007, allowed the motion to dismiss, concluding that, "[a]ccepting all of the factual allegations as true and construing all reasonable inferences in the Commonwealth's favor . . . the complaint and supporting affidavits fail to aver sufficient facts to support a nexus between the funds in the bank account and Kneller's illegal drug activity, and thus fail to meet the probable cause standard." The Commonwealth petitioned a single justice of the Appeals Court for relief pursuant to G. L. c. 231, § 118, first par. The single justice allowed the Commonwealth's application for leave to pursue an

interlocutory appeal and stayed the proceedings in the Superior Court. The Appeals Court vacated the allowance of the motion to dismiss and remanded the case to the Superior Court for further proceedings. *Commonwealth* v. *One 2004 Audi Sedan Auto.*, 73 Mass. App. Ct. 311, 321 (2008). Kneller appealed, and we granted his application for further appellate review.

We now vacate the allowance of the motion to dismiss and remand the case to the Superior Court for further proceedings consistent with this opinion. We also declare that, where the Commonwealth under G. L. c. 94C, § 47 (*f*) (1), has obtained an ex parte preliminary order to seize or secure property pending final adjudication of the forfeiture proceeding, a person claiming ownership of the property, after filing a motion and memorandum, supported by affidavits, is entitled to an adversary hearing to challenge the issuance of the preliminary order.

1. The first issue we confront is the standard to be applied to a motion to dismiss an action brought under our civil forfeiture statute, G. L. c. 94C, § 47, an issue we have not previously addressed. The Commonwealth contends that the standard under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), is the same in civil forfeiture cases as in other civil cases — whether the factual allegations in the complaint, assumed to be true, granting the pleader all reasonable inferences that may be drawn from those factual allegations, possess enough "heft" plausibly to suggest that the pleader is entitled to relief. *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008), quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007).[2] Kneller contends that the judge was correct in concluding that, in a motion to dismiss a civil forfeiture action, the "Commonwealth bears the burden of establishing probable cause that the items seized are subject to forfeiture." To determine the appropriate standard, we need first to examine the language and history of the civil forfeiture statute.

---

[2]The motion to dismiss was decided before our decision in *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008), which "retir[ed]" the language that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). In view of our decision, we need not decide in this case whether the "retired" language should still govern the motion to dismiss.

Under the civil forfeiture statute, a district attorney or the Attorney General, by motion in a criminal proceeding or by filing a civil action in the nature of a proceeding in rem, may seek an order from the Superior Court of forfeiture of various types of property, including "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance[,] . . . all proceeds traceable to such an exchange, including . . . all moneys . . . used or intended to be used to facilitate any violation of [the controlled substances statutes]." G. L. c. 94C, § 47 (a) (5). Where a person other than the Commonwealth claims to own the property at issue in the forfeiture proceeding, the Commonwealth at trial "shall have the burden of proving to the court the existence of probable cause to institute the action." G. L. c. 94C, § 47 (d). If the Commonwealth sustains its burden, the burden shifts to the claimant to prove that the property is not subject to forfeiture.[3] Id.

Prior to its amendment in 1989, see St. 1989, c. 653, §§ 73-80, the civil forfeiture statute provided that the Commonwealth at trial had "the burden of proving all material facts by a preponderance of the evidence." G. L. c. 94C, § 47, inserted by St. 1971, c. 1071, § 1. With the 1989 amendment, the Legislature imposed a burden of proof on the Commonwealth that was virtually identical to the burden of proof imposed on the Federal government in Federal forfeiture actions. Compare G. L. c. 94C, § 47 (d), as appearing in St. 1989, c. 653, § 79 ("the commonwealth shall have the burden of proving to the court the existence of probable cause to institute the action") with 19 U.S.C. § 1615 (1994) ("probable cause shall be first shown [by the government] for the institution of such suit or action, to be judged of by the court"). As a result, we have concluded that it is "reasonable to think that the Legislature revised [G. L. c. 94C,] § 47 (d), to achieve the result reached by the Federal statutes as construed by the Federal courts." Commonwealth v. Fourteen Thousand Two Hundred Dollars, 421 Mass. 1, 8 (1995). Congress subsequently altered that burden of proof with the Civil Asset For-

---

[3]General Laws c. 94C, § 47 (d), as appearing in St. 1989, c. 653, § 79, does not specify the standard that the claimant's evidence must meet in order to prevail on the merits. Because this issue is not before us now, we decline to address it.

feiture Reform Act of 2000, Pub. L. 106-185, 114 Stat. 202 (2000) (CAFRA) (codified principally at 18 U.S.C. § 983 [2006]),[4] but the Legislature has not followed suit. Therefore, in interpreting G. L. c. 94C, § 47 (d), we look not to CAFRA, but to the interpretation of the Federal forfeiture statute that preceded CAFRA.

We note initially that under G. L. c. 94C, § 47 (d), as under 19 U.S.C. § 1615, the government's burden is not to prove probable cause but to prove "the existence of probable cause to institute the action." See Bankers Life & Cas. Co. v. Commissioner of Ins., 427 Mass. 136, 140 (1998), quoting 2A B. Singer, Sutherland Statutory Construction § 46.06 (5th ed. 1992) (basic tenet of statutory construction is that statute must give effect "to all its provisions, so that no part will be inoperative or superfluous"). We have held that, in a forfeiture proceeding, this burden is "similar to its burden in seeking an indictment and less than its burden at a probable cause hearing to determine whether someone should be held for trial." Commonwealth v. Fourteen Thousand Two Hundred Dollars, supra at 9. We explained that the nub of the distinction is that, in seeking an indictment from a grand jury, the Commonwealth may present reliable hearsay, but at a probable cause hearing it is limited to admissible evidence. Id. at 8-9. "In the forfeiture situation, . . . if the Commonwealth proves probable cause to proceed, in the form of sound reason to believe that the money-drug nexus exists, although the Commonwealth does not have sufficient evidence to prove its case at trial, the Commonwealth acts responsibly by instituting the action and leaving to a claimant the statutory burden of proving entitlement to the property at issue." Id. at 9. In other words, the Commonwealth's burden in a civil forfeiture proceeding is not necessarily to prove, with admissible evidence, probable cause that the property at issue derived from illegal narcotics or facilitated a violation of the controlled substances laws, but to prove that the Commonwealth had reliable information in its possession that

[4]The Civil Asset Forfeiture Reform Act of 2000, Pub. L. 106-185, 114 Stat. 202 (2000) (CAFRA) (codified principally at 18 U.S.C. § 983 [2006]), changed the government's burden of proof at trial to proof by a preponderance of the evidence. 18 U.S.C. § 983(c)(1) ("the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture").

established probable cause of such a nexus and that justified the initiation of the in rem proceeding.

Ironically, the likely origin of this focus in G. L. c. 94C, § 47 (*d*), on "the existence of probable cause *to institute the action*" derives from provisions of pre-CAFRA Federal civil forfeiture law that differ markedly from our civil forfeiture statute (emphasis added). Under 21 U.S.C. § 881(b) (1994), there were two avenues by which the United States Attorney General could seize property pending final adjudication of forfeiture without a judicial finding of probable cause. The first avenue was to file a complaint in any Federal District Court having jurisdiction over the property. Once the complaint was filed, Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims, 28 U.S.C. app. 840 (1994) (Supplemental Rules) provided that "if the conditions for an action in rem appear to exist, an order so stating and authorizing a warrant for the arrest of the . . . property that is the subject of the action shall issue and be delivered to the clerk who shall prepare the warrant." Perhaps because the complaint sufficed to justify the preliminary seizure of the property, the complaint had to comply with Supplemental Rules C(2) and E(2)(a), which imposed a heightened pleading standard. See *United States* v. *Daccarett*, 6 F.3d 37, 47 (2d Cir. 1993), cert. denied, 510 U.S. 1192, and cert. denied, 511 U.S. 1030 (1994) (heightened pleading standard "an implicit accommodation to the drastic nature of the civil forfeiture remedy"); *United States* v. *Pole No. 3172, Hopkinton*, 852 F.2d 636, 638 (1st Cir. 1988) (particularity requirement in Supplemental Rules "is not merely a procedural technicality, but a way of ensuring that the government does not seize and hold, for a substantial period of time, property to which, in reality, it has no legitimate claim"). Supplemental Rule C(2) stated that the complaint had to be verified and "describe with reasonable particularity the property that is the subject of the action." Supplemental Rule E(2)(a) specified that the complaint had to "state the circumstances from which the claim arises with such particularity that the . . . claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."

The second avenue by which the United States Attorney General

could proceed under 21 U.S.C. § 881(b)(1)-(4) was "seizure without such process," where:

> "(1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;

> "(2) the property subject to seizure has been the subject of a prior judgment in favor of the United States in a criminal injunction or forfeiture proceeding under this subchapter;

> "(3) the Attorney General has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

> "(4) the Attorney General has probable cause to believe that the property is subject to civil forfeiture under this subchapter."

In the event of a seizure without judicial process under § 881(b)(3) or (4), the government had to institute forfeiture proceedings under § 881(d) promptly. 21 U.S.C. § 881(b).[5]

---

[5]Under 21 U.S.C. § 881(b) (1994), complaints filed prior to arrest and seizure of the property clearly had to comply with the Supplemental Rules for Certain Admiralty and Maritime Claims, 28 U.S.C. app. 837 (1994) (Supplemental Rules). However, the statute was ambiguous whether complaints filed after a seizure had occurred were also subject to the Supplemental Rules. The United States Court of Appeals for the Eleventh Circuit referred to the lack of clarity surrounding the applicability of the Supplemental Rules to a forfeiture action filed after arrest and seizure of the property under 21 U.S.C. § 881(a) as a "procedural morass." *United States* v. *$38,000.00 in U.S. Currency*, 816 F.2d 1538, 1540 (11th Cir. 1987). While the pre-CAFRA applicability of the Supplemental Rules to postseizure complaints was admittedly uncertain, both Supplemental Rules C(2) and E(2)(a) appeared to apply to all actions in rem, without distinguishing between forfeitures sought before or after the seizure of the property. Moreover, the United States Supreme Court remarked, "A civil forfeiture proceeding under [21 U.S.C.] § 881 is an action *in rem,* 'which shall conform as near as may be to proceedings in admiralty.' " *Republic Nat'l Bank* v. *United States*, 506 U.S. 80, 84 (1992), quoting 28 U.S.C. § 2461(b) (1988). See, e.g., *United States* v. *U.S. Currency, in the Amount of $150,660.00*, 980 F.2d 1200, 1204 (8th Cir. 1992) (Supplemental Rules applicable to complaint filed postseizure under 21 U.S.C. § 881[a]). It is, therefore, our understanding that, in general, a civil forfeiture complaint had to meet the heightened pleading standard under the Supplemental Rules, regardless whether the seizure preceded the filing of the complaint.

Because the United States Attorney General under pre-CAFRA Federal law could seize property pending trial without court order, Congress essentially imposed on the Attorney General the burden at trial to justify the pretrial seizure by showing probable cause "for the institution of such suit or action, to be judged of by the court." 19 U.S.C. § 1615. Because the burden of proof at trial under G. L. c. 94C, § 47 (d), derives from Federal law, the Commonwealth's burden of proof at trial is to show "the existence of probable cause to institute the action." G. L. c. 94C, § 47 (d). Our Legislature adopted this language even though our Attorney General and district attorneys under G. L. c. 94C, § 47, do not have authority comparable to the United States Attorney General to seize property pending trial without court order. In Massachusetts, to seize or secure property pending final adjudication of the civil proceeding, the Commonwealth must apply ex parte to the Superior Court for an order of custody, which "shall issue only upon a showing of probable cause." G. L. c. 94C, § 47 (f) (1).

Kneller relies on the unusual language of G. L. c. 94C, § 47 (d), in arguing that, to defeat a motion to dismiss a civil forfeiture complaint, the Commonwealth must demonstrate "the existence of probable cause to institute the action." The Federal courts that have interpreted the pre-CAFRA language of 19 U.S.C. § 1615, however, have uniformly concluded that, while the Attorney General must have probable cause to institute the forfeiture action, he did not have to prove probable cause until trial. See United States v. Daccarett, supra ("complaint does not have to meet the ultimate trial burden of showing probable cause for forfeiture"); United States v. U.S. Currency in the Amount of $150,660.00, 980 F.2d 1200, 1204-1205 (8th Cir. 1992); United States v. 2323 Charms Rd., 946 F.2d 437, 441 (6th Cir. 1991); United States v. One Parcel of Real Prop., 921 F.2d 370, 376 (1st Cir. 1990); United States v. Banco Cafetero Panama, 797 F.2d 1154, 1162 (2d Cir. 1986). This was true of all civil forfeiture actions, whether filed before or after seizure.[6] "[P]robable cause . . . for the institution of such suit or action" was the

---

[6]In United States v. Banco Cafetero Panama, 797 F.2d 1154, 1162 (2d Cir. 1986), the United States Court of Appeals for the Second Circuit held that "[u]nder the drug forfeiture statute, the Government may seize property upon the filing of a complaint and need not demonstrate probable cause until the

government's burden of proof at trial, not at the complaint stage.[7] 19 U.S.C. § 1615 (1994). See *United States* v. *Daccarett, supra.*

Under pre-CAFRA Federal law, to survive a motion to dismiss, the government's burden was two-fold. First, the allegations in the forfeiture complaint had to satisfy the heightened pleading requirement imposed by the Supplemental Rules. See, e.g., *United States* v. *Two Parcels of Real Prop.*, 92 F.3d 1123, 1126 (11th Cir. 1996); *United States* v. *Daccarett, supra,* citing *United States* v. *4492 S. Livonia Rd.*, 889 F.2d 1258, 1266 (2d Cir. 1989). Second, the complaint had to "establish a 'reasonable belief that the government can show probable cause for forfeiture at trial.' " *United States* v. *Daccarett, supra,* quoting *United States* v. *U.S. Currency in the Amount of $150,660.00, supra* at 1204-1205. See *United States* v. *TWP 17 R 4, Certain Real Prop. in Me.*, 970 F.2d 984, 987 (1st Cir. 1992). The complaint did not need to "allege facts sufficient to support a 'reasonable belief that specific property is tainted,' but facts sufficient to support 'a reasonable belief that the government could demon-

forfeiture trial." Four years later, it reached the same result with respect to actions under 21 U.S.C. § 881(b)(4), "where the property has been seized by the government prior to filing a complaint." *United States* v. *$37,780 in U.S. Currency*, 920 F.2d 159, 163 (2d Cir. 1990).

[7]Kneller correctly notes that, while the Circuit Courts of the United States Court of Appeals are divided, the majority have concluded that, in proving "probable cause . . . for the institution of such suit or action," the government was limited to the evidence that was in its possession at the time it filed the forfeiture complaint, and could not offer evidence acquired later. Compare, e.g., *United States* v. *One Lot of U.S. Currency ($36,634)*, 103 F.3d 1048, 1054 (1st Cir. 1997) (probable cause "measured by what the government knew at the time of the institution of the forfeiture proceedings"); *United States* v. *$191,910.00 in U.S. Currency*, 16 F.3d 1051, 1066-1067 (9th Cir. 1994) (same); *United States* v. *Ninety One Thousand Nine Hundred Sixty Dollars*, 897 F.2d 1457, 1462 (8th Cir. 1990) (same), with *United States* v. *$67,220.00 in U.S. Currency*, 957 F.2d 280, 284 (6th Cir. 1992) (court "must assess probable cause at the time of the forfeiture hearing"); *United States* v. *Four Parcels of Real Prop.*, 941 F.2d 1428, 1439 & n.24 (11th Cir. 1991) (en banc) (same); *United States* v. *4492 S. Livonia Rd.*, 889 F.2d 1258, 1268 (2d Cir. 1989) (same). Kneller, however, makes the illogical leap that, if the government is limited at trial to evidence in its possession at the time it filed the complaint, it must establish probable cause to defeat a motion to dismiss. The Federal case law is clear that the government's burden to prove probable cause to institute the action is a burden borne at trial, and need not be established earlier. See cases cited in the text, *supra.* We do not decide here whether, at trial, the Commonwealth is limited to evidence in its possession at the time it filed the forfeiture complaint.

strate *probable cause'* for finding the property tainted" (emphasis in original). *United States* v. *One Parcel of Real Prop.*, *supra* at 376, quoting *United States* v. *Pole No. 3172, Hopkinton*, 852 F.2d 636, 640 (1st Cir. 1988).

We believe that this pre-CAFRA Federal standard for a motion to dismiss also applies to a complaint brought under our own civil forfeiture statute, G. L. c. 94C, § 47 (*d*). Thus, we hold that a civil forfeiture complaint under G. L. c. 94C, § 47 (*d*), will survive a motion to dismiss if the Commonwealth pleads facts sufficient to support a reasonable belief that, at trial, the Commonwealth can show probable cause to believe the property is subject to forfeiture. As with any motion to dismiss alleging failure to state a claim under Mass. R. Civ. P. 12 (b) (6), the facts alleged in the forfeiture complaint are assumed to be true, and all reasonable inferences from those facts are to be granted to the plaintiff. Cf. *Welch* v. *Sudbury Youth Soccer Ass'n*, 453 Mass. 352, 354 (2009); *Blank* v. *Chelmsford Ob/Gyn, P.C.*, 420 Mass. 404, 407 (1995). In reaching this conclusion on the basis of Federal precedent, we recognize that our statute does not incorporate the particularized pleading requirement of the Supplemental Rules. While we do not go so far as to read the Supplemental Rules into our statute, we note that a complaint must be particular enough that a judge may reasonably apply this standard of review. If the Commonwealth were to file a civil forfeiture complaint without particularized allegations, a judge might not be able to conclude that the facts alleged are sufficient to support a reasonable belief that, at trial, the government can show probable cause to believe the property is subject to forfeiture.[8]

2. Kneller contends that this variant of the motion to dismiss standard, while more demanding than the usual standard under Mass. R. Civ. P. 12 (b) (6), is inadequate in civil forfeiture actions because a motion to dismiss is the only means by which the owner of the property at issue may challenge the preliminary seizure of the property under G. L. c. 94C, § 47 (*f*) (1). That

---

[8]In determining whether the allegations in the complaint are sufficiently particularized to survive a motion to dismiss, the judge may consider any affidavits filed with the complaint and incorporated by reference. See *United States* v. *U.S. Currency, in the Amount of $150,660.00*, 980 F.2d 1200, 1204 n.3 (8th Cir. 1992), citing *United States* v. *Parcels of Land*, 903 F.2d 36, 48 (1st Cir. 1990).

provision authorizes a preliminary order of seizure on a showing of probable cause in an ex parte application by the Commonwealth, but does not explicitly provide the person claiming ownership of the property with the opportunity to challenge the preliminary seizure through an adversary hearing. We agree that a seizure constitutes a significant deprivation of property, even if that deprivation is only temporary, pending final adjudication of the action. See *Fuentes* v. *Shevin*, 407 U.S. 67, 84-85 (1972); *Sniadach* v. *Family Fin. Corp. of Bay View*, 395 U.S. 337, 339 (1969). If a motion to dismiss were the only means by which a claimant could challenge whether there was probable cause to seize the claimant's property, we would agree that the standard we have adopted would fall short of our procedural due process requirements.[9] See *Paquette* v. *Commonwealth*, 440 Mass. 121, 131 (2003), cert. denied, 540 U.S. 1150 (2004), quoting *Armstrong* v. *Manzo*, 380 U.S. 545, 552 (1965) ("A fundamental requisite of 'procedural' due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner' "). We need not alter our standard to address this concern, however, because we declare that, under art. 12 of the Massachusetts Declaration of Rights, a motion to dismiss is not the only means by which a claimant may challenge a preliminary order of seizure.[10]

---

[9]We speak here only of procedural due process under art. 12 of the Massachusetts Declaration of Rights. We decline to decide whether the same result arises under the due process clause of the Fourteenth Amendment to the United States Constitution, because the United States Supreme Court recently vacated a decision holding that, "given the length of time . . . between the seizure of property and the opportunity for an owner to contest the seizure under the [Illinois Drug Asset Forfeiture Procedure Act], some sort of mechanism to test the validity of the retention of the property is required." *Smith* v. *Chicago*, 524 F.3d 834, 838 (7th Cir. 2008), vacated and remanded sub nom. *Alvarez* v. *Smith*, 130 S. Ct. 576 (2009) (case moot because underlying property disputes resolved at time of oral argument before United States Supreme Court). See *Krimstock* v. *Kelly*, 306 F.3d 40, 67 (2d Cir. 2002), cert. denied, 539 U.S. 969 (2003) ("the Fourteenth Amendment guarantee that deprivations of property be accomplished only with due process of law requires that plaintiffs be afforded a prompt post-seizure, pre-judgment hearing before a neutral judicial or administrative officer"). Because *Alvarez* v. *Smith*, *supra*, was decided on mootness grounds, the United States Supreme Court followed its ordinary course and vacated the decision of the United States Court of Appeals for the Seventh Circuit, "thereby 'clear[ing] the path for future relitigation of the issues.' " *Id.* at 583, quoting *United States* v. *Munsingwear, Inc.*, 340 U.S. 36, 40 (1950).

[10]By so declaring, we do not suggest that an adversary hearing was previously unavailable to a property owner whose property had been preliminarily

The nature of an ex parte motion is that the judge only hears one side of the evidence. The judge's determination of probable cause based on that evidence may be reasonable, but that determination may change after hearing the other side. See *United States* v. *James Daniel Good Real Prop.*, 510 U.S. 43, 55 (1993), quoting *Joint Anti-Fascist Refugee Comm.* v. *McGrath*, 341 U.S. 123, 170 (1951) (Frankfurter, J., concurring) ("fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights"); *Fuentes* v. *Shevin, supra* at 81 ("For when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented"). Moreover, we cannot ignore that our civil forfeiture statute gives the Commonwealth a direct pecuniary interest in civil forfeitures, in that final orders "shall provide for disposition" of the property seized, with proceeds "distributed equally between the prosecuting district attorney or attorney general and the city, town, or state police department." G. L. c. 94C, § 47 (*d*). The risk of erroneous deprivation of property is greater "where the Government has a direct pecuniary interest in the outcome of the proceeding." *United States* v. *James Daniel Good Real Prop.*, *supra* at 56. The forfeiture trial, which may occur months after the preliminary seizure, cannot "cure the temporary deprivation that an earlier hearing might have prevented." *Connecticut* v. *Doehr*, 501 U.S. 1, 15 (1991).

In the criminal context, when property has been seized, the defendant may bring a motion to suppress and, if the property is found to have been unlawfully seized, may move for its return. See *Commonwealth* v. *Sacco*, 401 Mass. 204, 208 (1987) ("If a defendant moves for the return of property which a judge has already determined in the same proceeding was unlawfully seized, and no third person has any reasonable claim to the property, the judge has the authority to enter any appropriate order concerning the return of the property . . ."). We now create a comparable remedy for civil forfeiture claimants whose property has been

seized pursuant to an ex parte order. Trial judges, based on their interpretation of art. 12 or their sense of fairness, may have permitted an adversary hearing if so requested by the property owner. This is the first time, however, that we have definitively declared that a property claimant is entitled under art. 12 to such an adversary hearing.

seized pursuant to an ex parte order. Prior to trial, a claimant may file a motion and memorandum, supported by affidavits, to vacate the order of preliminary seizure by (1) demonstrating that the evidence in the Commonwealth's affidavits in support of its ex parte motion, even if true, was legally insufficient to justify a finding of probable cause; (2) showing that material facts in the Commonwealth's affidavits were inaccurate; or (3) providing additional information that, had it been before the judge at the time of the Commonwealth's motion, would have demonstrated a lack of probable cause to seize.[11] By allowing an individual whose property has been preliminarily seized an opportunity to be heard on the issue of probable cause to seize prior to the forfeiture trial, we strike a balance between the Commonwealth's interest in seizing property that it reasonably believes is subject to forfeiture and the entitlement of an individual deprived of property to a prompt and objective determination of the validity of that preliminary seizure. See *Commonwealth* v. *Knapp*, 441 Mass. 157, 166 (2004) ("Where, as here, the government interferes with an individual's protected [due process] interest, we must balance the interest of the individual affected, the risk of erroneous deprivation of that interest, and the government's interest in the efficient administration of its affairs"). See also *Mathews* v. *Eldridge*, 424 U.S. 319, 334-335 (1976).

3. We turn now to consider whether the Commonwealth's complaint was sufficient under the standard we announce today to survive a motion to dismiss. We summarize the relevant facts found in the Commonwealth's complaint for civil forfeiture and the attached affidavits of State Trooper Timothy J. Curtin and State police Sergeant Mark W. Kiley, which are incorporated in the complaint.[12]

In December, 2004, Special Agent Kevin Tidwell of the San Diego, California, office of the Drug Enforcement Administration learned from an informant about an electronic mail (e-mail) account through which customers could begin the process of

---

[11]We need not decide here whether this adversary hearing on the issue of probable cause must also be evidentiary if requested by the claimant.

[12]The complaint incorporates by reference only the February 18, 2006, affidavit of State Trooper Timothy J. Curtin. However, that affidavit incorporates by reference Sergeant Mark W. Kiley's affidavit, which therefore is incorporated in the complaint. See note 8, *supra*.

ordering illegal steroids. The informant said that the individuals behind the e-mail account operated the largest underground steroid laboratory in the country and had been operating for at least six years. Special Agent Tidwell sent an e-mail message to the e-mail address provided by the informant requesting a price list. In response, he received a price list for various steroids and instructions to send his steroid order by e-mail to another e-mail address. Special Agent Tidwell then applied for and received a search warrant for both e-mail addresses. The information obtained from the execution of those search warrants led to the identification of a third e-mail address associated with the steroid distribution scheme, which was registered to Kneller, a former registered nurse who resided in Canton and had written articles about "body building."

After executing a search warrant for the third e-mail address, Special Agent Tidwell learned from e-mails that Kneller, along with a partner, Gary Somerville of Los Angeles, California, operated Red Star Laboratories (Red Star). Kneller used his e-mail address to send out price lists and advise customers of "special buys"; Somerville used his e-mail address to receive steroid orders from customers and issue instructions on where and how to send money. The operation only accepted cash wrapped in aluminum foil that was mailed to commercial "mail-drop" locations in the area where Somerville resided. After receiving payment for an order, Somerville would tell Kneller what to ship and to whom, and would send Kneller's share of the profits in cash to a mail-drop in Randolph. In October, 2005, Special Agent Tidwell placed an order for steroids to Somerville's e-mail address, and received a parcel, bearing a Randolph postmark and a fictitious post office box return address, that contained three vials of liquid and one bottle of pills, all of which were found to be steroids. This parcel was one of thirteen parcels that Kneller had mailed on October 19, 2005, each with the same fictitious return address. A review of postal records revealed more than one hundred suspect packages thought to contain steroids that were mailed by Kneller from the Randolph post office since October, 2004.

On October 14, 2005, Kneller participated in an interview that was broadcast live on the Internet Web site "bodybuilding.com." In the interview, Kneller indicated that he manufactured per-

formance enhancing products, and frequently traveled to China to inspect the factories from which he purchased his supplements. By his side during the interview was Rich Gaspari of Gaspari Nutrition, Inc., a seller of nutritional supplements.

On November 29, 2005, Kneller was observed carrying a large plastic trash bag into the Randolph post office, where he mailed twelve parcels, each with a false return address, to different persons in eleven different States. One parcel was addressed to a person who had ordered $704 worth of steroids in April, 2005; another was addressed to a person who had ordered $900 worth of steroids in April, 2005.

Also in late November, 2005, Special Agent Tidwell received an e-mail message from Kneller's e-mail address advising of a "holiday sale," which stated that Red Star had filled 15,000 orders in seven years of business and had never had one package intercepted. The promotion also advertised Red Star's products as "the classiest and safest steroids being sold anywhere by anyone."

In November, 2005, and again in early February, 2006, Kneller received parcels (collectively weighing ninety-four pounds) from a distributor that, among other things, sells pharmaceutical packaging. Tidwell believed that Kneller received steroid packaging supplies from this distributor.

On February 14, 2006, Kneller mailed fifteen packages from the Randolph post office, each with a fictitious return address. Federal search warrants were obtained to search these packages. When executed, each package contained anabolic steroids and Cialis, both class E controlled substances under G. L. c. 94C.

On February 17, a search warrant was obtained by Sergeant Kiley authorizing the search of Kneller's apartment in Canton. In executing that search warrant, the State police seized, among other things, $4,359 in United States currency; $1,055 in Chinese currency; seven handguns; two rifles and one shotgun; 1,664 bottles of powder-filled capsules, believed to contain anabolic steroids, all but a few of which bore no label; four two and one-half gallon containers containing suspected liquid anabolic steroids; and a box with numerous preprinted Red Star labels. Kneller admitted that the steroids belonged to him. Based on the Red Star price list Special Agent Tidwell had obtained, the

retail value of the powder-filled capsules was estimated as $124,800.

On February 18, the State police obtained a search warrant to "freeze" Kneller's checking account at Bank of America. This account on December 15, 2005, had a balance of $147,806.92; the balance when the account was frozen was $226,511.92. During this two-month period, Kneller had made seven outgoing wire transfers, totaling $275,314, to locations outside the United States, including China and Hong Kong. Also during this time, Kneller received three incoming wire transfers, totaling $375,500. One of these incoming wire transfers, in the amount of $215,500, originated from Gaspari Nutrition, Inc. There was also a check deposited in the amount of $60,000 with the notation "Re: Peak Performance Labs." Another deposit in the amount of $11,500 appeared to be the proceeds from the sale of Kneller's 2004 Harley Davidson motorcycle.

In their affidavits, both Trooper Curtin and Sergeant Kiley noted the typical practice among drug distributors to commingle illegal drug proceeds with legitimate funds. They also stated that drug distributors tend to associate with cash businesses or persons involved in cash businesses to establish the appearance of a lawful source of income. Finally, Trooper Curtin stated that dealers of steroids often obtain illegal substances or the steroids themselves from outside the United States in bulk or large quantities for manufacture or resale here.

We conclude that the Commonwealth's complaint, with the particularized allegations incorporated from Trooper Curtin and Sergeant Kiley's affidavits, was sufficient as a matter of law to support a reasonable belief that the Commonwealth had probable cause to institute the action. In the civil forfeiture context, we have equated probable cause with "sound reason to believe that the money-drug nexus exists." *Commonwealth* v. *Fourteen Thousand Two Hundred Dollars*, 421 Mass. 1, 9 (1995). More than "mere suspicion" but less than "prima facie proof" will suffice. *Id.* at 8, quoting *United States*. v. *$250,000 in U.S. Currency*, 808 F.2d 895, 897 (1st Cir. 1987). See *Commonwealth* v. *Brown*, 426 Mass. 475, 478 n.4 (1998). Rather than show a link between the money seized and a particular drug transaction, the Commonwealth needs only to show that "the money was probably derived from illegal drug transactions." *Commonwealth* v.

*Brown, supra* at 479, quoting *United States* v. *$250,000 in U.S. Currency, supra* at 900. Alternatively, the Commonwealth may show that the money probably was used or intended to be used to facilitate a violation of the controlled substances laws. G. L. c. 94C, § 47 (*a*) (5).

Here, the Commonwealth alleged facts that support a reasonable belief that the Commonwealth had probable cause to believe that a nexus existed between Kneller's Bank of America account and his illegal drug operation. Assuming the alleged facts to be true, Kneller helped manage a business that arranged for the manufacture, sale, and distribution of large quantities of illegal steroids. When the search of his home was conducted, he admitted to the possession of illegal steroids whose retail value was estimated to be $124,800. Kneller declared in his Internet interview that he manufactured performance enhancing products, and frequently traveled to China to inspect the factories from which he purchased these products. Because Kneller, with Somerville, operated Red Star, a business that had operated for seven years and filled 15,000 orders, and because Kneller was responsible for shipping the orders that Somerville had obtained, it is reasonable to infer that Kneller obtained the substantial quantity of steroids that he shipped from the factories in China of which he spoke in his interview. It is equally reasonable to infer that the wire transfers he made from his Bank of America account to locations in China and Hong Kong paid for the illegal steroids he had purchased, perhaps including the substantial quantity of steroids found in his apartment. While the judge correctly noted that the largest incoming wire transfer was from Gaspari Nutrition, Inc., and that there is no allegation that Gaspari's products were unlawful, both Trooper Curtin and Sergeant Kiley remarked on the known practice among drug distributors to conceal the proceeds of their illegal drug sales by commingling them with legitimately earned funds. Taken together, with all reasonable inferences drawn in the Commonwealth's favor, these allegations support a reasonable belief that the Commonwealth had probable cause to initiate this forfeiture action against the Bank of America account based on the claim that the funds in this account either were the proceeds of illegal steroid transactions, were intended to be used to purchase illegal steroids, or were intended to be used to facilitate the

purchase or sale of illegal steroids. G. L. c. 94C, § 47 (*a*) (5). Therefore, as a matter of law, the complaint must survive a motion to dismiss.

4. We vacate the order of the Superior Court judge granting Kneller's motion to dismiss, and remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*