Hinkle, Margaret R., J.
This action arises out of a dispute over the rights and interests of plaintiffs Rajesh Idnani and Neelem Idnani Julian in certain hedge funds managed by defendants Venus Capital Management, Inc., and Venus Investment Partners, LLC, corporations owned and/or managed by defendant Vikas Mehrotra. The plaintiffs claim (i) that the defendants wrongfully waived revenue-generating fees due the plaintiffs from two such hedge funds, and (ii) that the defendants then closed those funds, only to open essentially identical successor funds, in a fraudulent “shell game” scheme to terminate the plaintiffs’ rights and ownership interests.
The complaint alleges fraudulent conveyance in violation of G.L.c. 109A (Count I), conversion (Count II) and unfair or deceptive acts or practices in violation of G.L.c. 93A, §11 (Count VI) against all defendants, and breach of fiduciary duties (Count III), breach of contract (Count V) and breach of the implied covenant of good faith and fair dealing (Count IV) against Venus Capital Management, Inc., Venus Investment Partners, LLC and Mehrotra. The plaintiffs also seek a declaration that they are entitled to a percentage of the net management fees from the successor funds (Count VII).
Currently before the Court is the defendants’ motion to dismiss all the plaintiffs’ claims under Mass.R.Civ.P. 12(b)(6). After a hearing, the motion is allowed as to defendants Venus Arbitrage Fund, L.P., Venus Special Situations Fund, L.P. and Venus Investment Partners, LLC. The motion is otherwise denied.
BACKGROUND
For purposes of assessing a motion to dismiss for failure to state a claim, the Court “accept[s] the allegations set forth in the complaint, as well as reasonable inferences therefrom, as true.” Nguyen v. William Joiner Ctr. for Study of War and Social Consequences, 450 Mass. 291, 292 (2007). The material factual allegations and documents included in the record reveal the following.[3]
In or around April 2003, a business marketer introduced plaintiff Idnani to defendant Mehrotra. Mehrotra was raising money to start a hedge fund business that would pursue a foreign equity arbitrage strategy. Idnani and plaintiff Julian were active investors, looking to identify suitable opportunities for investment in hedge funds and, in particular, funds specializing in foreign equity arbitrage. Mehrotra explained that he needed capital to purchase computers, software and other assets required to launch the business.
On May 28, 2003, the plaintiffs entered into a Subscription Agreement with Mehrotra and the Venus Series Trust. Under that agreement, the plaintiffs agreed, among other things, to invest $150,000 in the trust and make a $2 million capital contribution to defendant Venus Arbitrage Fund, L.P. (Arbitrage Fund), in exchange for interests in those entities and certain other funds that Mehrotra might thereafter establish. The Arbitrage Fund was a Delaware limited partnership.[4]
On December 31, 2004, the plaintiffs executed a limited liability company agreement (the Agreement) with Mehrotra and his company, Venus Capital Management, Inc. (Venus Capital Management). Mehrotra was (and is) Chairman, Chief Executive Officer and sole owner of Venus Capital Management. The recitals to the Agreement state that the Venus Series Trust had been converted from a Delaware business trust into a Delaware limited liability company, and the Agree- *584 merit in effect formed Venus Investment Partners, LLC (Venus Investment Partners) as a Delaware limited liability company out of the Venus Series Trust. Mehrotra was the Manager of Venus Investment Partners.
Venus Capital Management was the 72.5 percent majority owner of Venus Investment Partners, and the plaintiffs were 27.5 percent minority owners. Venus Investment Partners was formed for the purpose of acting as general partner of the Arbitrage Fund; the plaintiffs were limited partners of that fund.
The Arbitrage Fund returned 12.24 percent, 9.47 per cent, 14.11 percent and 16.50 percent, in 2004, 2005, 2006 and 2007, respectively. As of early 2007, however, Mehrotra had not paid the plaintiffs any management or performance fees received by Venus Investment Partners. Disputes had arisen between the parties, including disagreement over the plaintiffs’ claimed right to 27.5 percent of the generated fees.
The plaintiffs subsequently brought an arbitration proceeding before the American Arbitration Association against Mehrotra, Venus Capital Management, Venus Investment Partners and the Venus Series Trust.[5] In that arbitration, the plaintiffs sought to enforce, among other things, their right to receive 27.5 percent of the management fees generated by the Arbitrage Fund and the Venus Special Situations Fund, L.P. (Special Situations Fund), a fund managed by Venus Capital Management.[6]
In December 2007, the arbitration panel issued its award, which was confirmed by this Court (Gants, J.) as a Final Judgment the following month. Among other things, the panel determined that the plaintiffs owned and would thereafter retain a 27.5 percent ownership interest in Venus Investment Partners. The panel awarded the plaintiffs 27.5 percent of the “net management fees” that Venus Investment Partners received from the Arbitrage Fund and made similar determinations with respect to plaintiffs’ past and future right to receive fees in the Special Situations Fund.
In part, the award included a provision entitled, “Sale of the Funds, Fund Managers, Successors Bound,” which stated:
(1) With regard to the relief afforded for the respective funds and as to fund management revenue, to the extent that the interest of [the plaintiffs] is in a share of revenue of Net Management Fees, it is awarded that the interest of [the Plaintiffs] in each case “runs with the management rights” and any successor or assignee of the fund manager or fund property in each case shall be notified of the existence of this Award by Vikas Mehrotra.
(2) Any such successor or assignee of the fund therefore shall take the assignment subject to the rights of .[the plaintiffs] and interests of [the plaintiffs] in the revenue of the respective applicable funds and fund managers. In the event of any sale or transfer of VIP, [the plaintiffs] shall receive 27.5 percent of the net proceeds of the sale or transfer.
In addition, the award provided an accounting procedure for determining and paying both the past due net management fees and also the fees due and payable for each successive calendar quarter commencing with the quarter ending March 31, 2008. Under that procedure, Barry Stadlin of Rothstein Kass was appointed as an independent accountant to determine net management fees owed.
Enforcement of the award has been litigious as a result of disputes over the quarterly accountings that Mehrotra was to provide the plaintiffs. For instance, although the Arbitrage Fund was profitable from January through August 2008 and the Special Situations Fund has cumulatively outperformed its benchmark index since inception, Mehrotra claimed that he waived the net management fees for those funds in the second quarter of 2008. This alleged waiver was made unilaterally, without notice to the plaintiffs. Stadlin rejected the fee waiver for lack of evidence, and required Mehrotra to pay the plaintiffs their share of the funds’ net management fees for the second quarter of 2008. Then, in the third and fourth quarters of 2008, Mehrotra again purportedly waived the fund management fees to which the plaintiffs claim they were entitled.
The day after Judge Gants entered Final Judgment confirming the award, Venus Capital Management filed papers in Delaware to open the Venus Relative Value Fund (Relative Value Fund) and the Venus Event Driven Fund (Event Driven Fund). The complaint alleges that the Relative Value Fund was established as the successor and a competitor to the Arbitrage Fund and that the Event Driven Fund was established as the successor and a competitor to the Special Situations Fund.
The complaint alleges that the name “Venus Relative Value Fund” is synonymous with the name “Venus Arbitrage Fund” and that it is commonly understood within the investing community that an “arbitrage fund and a ’’relative value fund" are generically the same. For instance, the industry website, HFM Week, named the Arbitrage Fund as the 2007 Winner, “Best Relative Value Fund.”
The complaint similarly alleges that the name “Venus Event Driven Fund” is synonymous with the name “Venus Special Situations Fund” and that it is commonly understood within the investing commu-niiy that an “event driven fund” and a “special situations fund” are generically the same. For instance, Terrapinn nominated the Special Situations Fund for the 2008 Award of “Best Asia Event Driven Fund.”
The plaintiffs assert “[o]n information and belief’ that the defendants have actively represented to investors that the Relative Value Fund executes strate *585 gies that are substantially the same as the strategies of the Arbitrage Fund, and that the defendants have used the investment performance of the Arbitrage Fund to market the Relative Value Fund. According to marketing materials regarding the Relative Value Fund,
Venus Capital Management specializes in trading relative value strategies in emerging markets. We believe that global volatility, large block trades by institutional managers and behavioral inefficiencies create short-term imbalances in demand and supply that can be exploited by a disciplined risk-controlled investment process. Venus has developed systematic proprietary models to capture these opportunities using several relative value strategies, such as, cross country parity trading and ETF v. components trading, across emerging markets, including Asia, Latin America, South Africa, the Middle East, and North Africa. The objective of the Fund is to generate alpha by hedging at the individual security level, resulting in long-term capital growth that is uncorrelated to the market.
The complaint also asserts “(o]n information and belief’ that the defendants have actively represented to investors that the Event Driven Fund executes strategies that are substantially the same as the strategies of the Special Situations Fund. According to marketing materials regarding the Event Driven Fund,
The Fund will invest in event driven strategies in global markets including India, Asia, Latin Amer-ica, South Africa, the Middle East, and North Africa. The Manager believes that event driven opportunities reduce systematic risk and offer a less volatile way to invest in potentially turbulent markets. Opportunities can arise to due to [sic] the lack of sell-side analysts, a misunderstanding of potential business prospects, and incorrect peer group evaluation. The Fund targets an annualized return of 20% and invests in a variety of securities including equities and equity derivatives, fixed income instruments and fixed income derivatives, money market instruments, as well as, IPOs and pre-IPO opportunities.
The complaint also asserts “[o]n information and belief’ that the defendants have used and are using proprietary software, systematic proprietary models, and/or other assets in which plaintiffs hold an ownership interest for the benefit of the Relative Value Fund and the Event Driven Fund.
By correspondence dated November 25, 2008, Venus Capital Management represents that it informed investors that it was closing the Arbitrage and Special Situations Funds. Nearly three years earlier, Mehrotra had threatened to “take drastic measures” and “close the fund down” if the disputes that ultimately went to arbitration were not resolved to his satisfaction.[7] On March 31, 2009, certificates of cancellation for the Arbitrage Fund and Special Situations Fund were filed with the Delaware Secretary of State’s Office.
The day before those hedge funds were closed, a certificate of cancellation of Venus Investment Partners had been filed with the Delaware Secretary of State’s Office. The plaintiffs did not vote for the dissolution of Venus Investment Partners; they did not receive any notice in advance of the dissolution, and no assets of Venus Investment Partners were distributed to them upon dissolution and/or winding up of the company’s affairs.
DISCUSSION
Before the Court is the defendants’ motion to dismiss the complaint under Mass.R.Civ.P. 12(b)(6). Under the applicable standard, to state a claim that survives a motion to dismiss for failure to state a claim, the pleaded factual allegations assumed to be true and the permissible inferences must plausibly suggest entitlement to relief. See Commonwealth v. One 2004 Audi Sedan Auto., 456 Mass. 34, 36 (2010), citing Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). That standard is met here for the reasons argued by the plaintiffs in their opposition memorandum, except with respect to claims against Venus Investment Partners, the Arbitrage Fund and the Special Situations Fund. Upon careful review of the parties’ respective arguments, the Court is persuaded that the dissolution of those three entities in Delaware warrants their dismissal from this case.
The defendants’ argument on this issue is straightforward. Approximately one year before the plaintiffs filed their complaint, the Delaware Secretary of State issued certificates of cancellation of Venus Investment Partners, the Arbitrage Fund and the Special Situations Fund. As a general proposition of Delaware law, “absent statutory authority, no claim may be brought against a dissolved entity.” Metro Communication Corp. BVI v. Advanced Mobilecomm Techs., Inc., 854 A.2d 121, 138 (Del. Ch. 2004) (Metro Communication). More specifically, both the Delaware Limited Partnership Act and Limited Liability Company Act provide that suit generally may be brought against a limited partnership or limited liability company only until the certificate of cancellation is filed. Del.CodeAnn. 6, §17-803(b) (LP Act); Del.CodeAnn. 6, §18-803(b) (LLC Act); see Metro Communication, 854 A.2d at 138 (discussing LLC Act).[8] Thus, the defendants conclude, under Smyth v. Marshall Field, Fifth, the plaintiffs must seek to nullify the certificates of cancellation in the Delaware courts before bringing claims in Massachusetts against the dissolved defendants. See 40 Mass.App.Ct. 625, 630-31 (1996), citing Gunter v. Arlington Mills, 271 Mass. 314, 316 (1930) (“Ordinarily our courts decline to take jurisdiction where perfor- *586 manee of a positive act is to be carried out in another State”).
The plaintiffs argue that, under Metro Communication, dismissal of those defendants is inappropriate because the complaint alleges sufficient facts to support nullification of the certificates of cancellation. See 854 A.2d at 139-40 (denying motion to dismiss because complaint pleaded facts supporting inference that entity was wound up in contravention of LLC Act).
The plaintiffs also contend that they are not required to file a separate predicate nullification action in Delaware. For that proposition, the plaintiffs solely rely upon the footnote in Metro Communication, in which the court noted that neither In re CC&F Fox Hill Assocs. Ltd. Partnership, 1997 WL 349236 (Del.Ch. June 13, 1997), nor the relevant Delaware statute required the plaintiff limited liability company member to bring a separate action to nullify the company’s certificate of cancellation before it could bring a derivative action. See 854 A.2d at 138 n.27.
The plaintiffs’ reliance is misplaced. The problem with the plaintiffs’ argument is that it overlooks the fact that Metro Communication was a Delaware action. That it was unnecessaiy to file a separate action in the circumstances of that case in no way refutes the defendants’ argument that jurisdiction is appropriate in Delaware, not Massachusetts, for an action to nullify certificates of cancellation issued in Delaware.
On balance, therefore, the Court is persuaded that the claims against Venus Investment Partners, the Arbitrage Fund and the Special Situations Fund should be dismissed. As noted, however, the allegations in the complaint otherwise possess the requisite “heft,” Commonwealth v. One 2004 Audi Sedan Auto., 456 Mass. at 36, plausibly to suggest entitlement to relief.
ORDER
For the foregoing reasons, the defendants’ Motion to Dismiss is ALLOWED as to all claims against defendants Venus Investment Partners, LLC, Venus Arbitrage Fund, L.P. and Venus Special Situations Fund, L.P. The motion is otherwise DENIED.

 The parties have presented various documents relating to their dispute. In evaluating the pending motion, a court may take into account “matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint,” Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000), quoting 5A C.A. Wright & A. R. Miller, Federal Practice and Procedure: Civil 2d §1357, at 299 (1990), in addition to documents attached to a defendant’s motion, where the plaintiff had notice of those documents and relied upon them in framing the complaint, Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004). The Court has not considered materials that would warrant treating the motion to dismiss as one for summary judgment.

 The Arbitrage Fund had an offshore subsidiary, the Venus Arbitrage (Offshore) Fund, LTD, a British Virgin Islands Business Company. Both the complaint and the plaintiffs’ motion papers treat the two funds as a single entity. Only the former is a named defendant.

 The Arbitration was entitled, Rajesh Idnani and Neelam Idnani Julian, Claimants v. Vikas Mehrotra, Venus Capital Management, Venus Investment Partners, LLC and Venus Series Trust, Respondents, AAA Case No. 11 148 Y 02235 06.

 The Special Situations Fund and Venus Special Situations Offshore Fund LTD were funds in a master fund structure with an intermediary company called VACUF LTD that passed through all management fees to Venus Capital Management, the sole investment manager of the funds. Both the complaint and plaintiffs’ motion papers treat the two funds as a single entity. Only the former is a named defendant.

 On February 21, 2006 Mehrotra e-mailed Idnani that he would “take drastic measures” if certain disputes between the parties were not resolved to his satisfaction. In an e-mail dated March 16, 2006, Mehrotra stated, “You may even win the arbitration case in your favor and at that point I will close the fund down cause [sic] my life is more important that [sic] one fund.” Mehrotra later stated in sworn testimony that, if he closed the fund down, the plaintiffs “would be hurt,” and went on to say, “I will shut it down.”

 As has been noted by the Delaware courts, the LLC Act was “modeled on the popular Delaware LP Act,” and, “[i]n fact, its architecture and much of its wording is almost identical to that of the Delaware LP Act. ” Atochem N. Am., Inc. v. Jaffari, 727 A.2d 286, 290 (Del. 1999); CML V, LLC v. Bax, 6 A.3d 238, 245 (Del.Ch. 2010). Delaware Code Ann. 6, §17-803(b), provides:
Upon dissolution of a limited partnership and until the filing of a certificate of cancellation as provided in §17-203 of this title, the persons winding up the limited partnership’s affairs may, in the name of, and for and on behalf of, the limited partnership, prosecute and defend suits, whether civil, criminal or administrative, gradually settle and close the limited partnership’s business, dispose of and convey the limited partnership’s property, discharge or make reasonable provision for the limited partnership’s liabilities, and distribute to the partners any remaining assets of the limited partnership, all without affecting the liability of limited partners and without imposing the liability of a general partner on a liquidating trustee.
Delaware Code Ann. 6, §18-803(b) provides:
Upon dissolution of a limited liability company and until the filing of a certificate of cancellation as provided in §18-203 of this title, the persons winding up the limited liability company’s affairs may, in the name of, and for and on behalf of, the limited liability company, prosecute and defend suits, whether civil, criminal or administrative, gradually settle and close the limited liability company’s business, dispose of and convey the limited liability company’s property, discharge or make reasonable provision for the limited liability company’s liabilities, and distribute to the members any remaining assets of the limited liability company, all without affecting the liability of members and managers and without imposing liability on a liquidating trustee.