NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12479
SJC-12480


COMMONWEALTH  vs.  JOSE MARTINEZ.
COMMONWEALTH  vs.  STEPHANIE GREEN.



Essex.  Middlesex.     September 7, 2018. - October 30, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Practice, Criminal, Restitution, Costs, Fees and costs,
     Probation.  Restitution.  Supreme Judicial Court,
     Superintendence of inferior courts.



     Complaint received and sworn to in the Haverhill Division of the District Court Department on July 13, 2009.

     A motion for restitution of costs and fees, filed on June 12, 2017, was heard by Stephen S. Abany, J., and questions of law were reported by him to the Appeals Court.

     The Supreme Judicial Court granted an application for direct appellate review.

     Complaints received and sworn to in the Framingham Division of the District Court Department on August 10 and September 14, 2007.

     A motion for return of property, filed on August 25, 2017, was heard by David W. Cunis, J., and questions of law were reported by him to the Appeals Court.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

Benjamin H. Keehn, Committee for Public Counsel Services (Nancy J. Caplan & Eric Brandt, Committee for Public Counsel Services, also present) for the defendants.
Jessica Langsam & Robert E. Toone, Assistant District Attorneys, for the Commonwealth.
Sarah M. Joss, Special Assistant Attorney General, for Massachusetts Probation Service.
Luke Ryan, Daniel N. Marx, & William W. Fick, for Stacy Foster & others, amici curiae, submitted a brief.

GANTS, C.J.  In Nelson v. Colorado, 137 S. Ct. 1249, 1252 (2017), the United States Supreme Court held that "[w]hen a criminal conviction is invalidated by a reviewing court and no retrial will occur," the State is required under the due process clause of the Fourteenth Amendment to the United States Constitution "to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction."  There can be no doubt that, because of this controlling authority, Massachusetts courts are required to order the refund of fees, court costs, and restitution paid by a defendant as a consequence of a later invalidated conviction. These two cases, however, present ten reported questions regarding the scope and application of the due process obligations established in the Nelson decision.  We have reformulated the reported questions into three broader questions to provide guidance to trial courts and litigants regarding the

repayment of probation fees, victim-witness assessments, restitution, fines, forfeitures, and court costs after a conviction has been invalidated.[1]

Background. 1. Jose Martinez. In 2010, Jose Martinez pleaded guilty in District Court to three counts of possession of a controlled substance with intent to distribute and one count of unlicensed operation of a motor vehicle. On the three drug convictions, Martinez received concurrent sentences of one year in a house of correction, suspended, with two years of probation supervision. On one of his drug convictions, Martinez was also ordered to pay $1,000 in restitution to the Haverhill police department,[2] a monthly fee of sixty-five dollars, as required under G. L. c. 276, § 87A, for those placed on

---

[1] We acknowledge the amicus briefs submitted by Stacy Foster, Jamie Kimball, Jonathan Riley, Nicole Westcott, and a proposed class of all others similarly situated.

[2] The record does not reflect the basis for the order of restitution. Generally, judges may order defendants to pay restitution only to the victims of their crimes and only to reimburse them for "economic losses caused by the defendant's conduct and documented by the victim." Commonwealth v. Henry, 475 Mass. 117, 120 (2016), quoting Commonwealth v. McIntyre, 436 Mass. 829, 834 (2002). See also G. L. c. 258B, § 3 (o) (victims have right "to request that restitution be an element of the final disposition of a case").

supervised probation,[3] and a victim-witness assessment of ninety dollars, as required under G. L. c. 258B, § 8, for those convicted of a felony.[4]  On his conviction for unlicensed operation of a motor vehicle, Martinez was ordered to pay a fine of one hundred dollars.  After being sentenced on his drug convictions, Martinez paid a total of $2,650:  $1,000 in restitution, $1,560 in monthly probation supervision fees, and a victim-witness assessment of ninety dollars.

On April 19, 2017, Martinez's drug convictions were vacated and dismissed with prejudice pursuant to the single justice's order arising from our decision in Bridgeman v. District Attorney for Suffolk Dist., 476 Mass. 298 (2017) (Bridgeman II), because the convictions were tainted by the misconduct of Annie Dookhan, a chemist who was employed by the William A. Hinton State Laboratory Institute when the drugs seized from Martinez were examined by that laboratory.  Martinez's misdemeanor

---

[3] The monthly fee for those placed on supervised probation is comprised of two components:  a "probation supervision fee" in the amount of sixty dollars per month and a "victim services surcharge" in the amount of five dollars per month.  See G. L. c. 276, § 87A.  For the sake of convenience, we treat these two components as a single monthly probation fee of sixty-five dollars.

[4] Martinez also was ordered to forfeit any monies found on his person at the time of his arrest, but the record does not reflect the amount of any such monies and Martinez has not sought their refund.

conviction of unlicensed operation of a motor vehicle was not dismissed.

After being informed that his drug convictions had been dismissed with prejudice, Martinez filed a motion for the return of his probation supervision fees, victim-witness assessment, and restitution payment.  The judge, without ruling on the motion, reported the matter and seven questions of law to the Appeals Court pursuant to Mass. R. Crim. P. 34.[5]  We allowed the defendant's motion for direct appellate review.

---

[5] The reported questions are:

(1) "Does the refund language in G. L. c. 258B, §8 apply to convictions vacated pursuant to the global Dookhan order?  If the statute does apply, what is the showing a defendant must make to be entitled to a refund of a victim witness fee imposed pursuant to G. L. c. 258B, § 8, and, if a defendant makes such a showing, from what source should this payment be refunded?"

(2) "If G. L. c. 258B, § 8 does not apply in these circumstances, is refund of a victim witness fee required pursuant to Nelson v. Colorado, 137 S. Ct. 1249 (2017)?  If Nelson does require refunding victim witness fees, what is the showing a defendant must make to be entitled to a refund of such fees, and from what source should this payment be refunded?"

2. <u>Stephanie Green</u>. On October 8, 2008, Stephanie Green was sentenced in District Court on two drug-related counts arising from a complaint that had been filed after a search warrant had been executed at her residence on August 9, 2007. Green was placed on supervised probation for two years on each count, to be served concurrently. On one of these counts, Green was assessed a probation fee of sixty-five dollars per month and

---

(3) "If a refund is required either pursuant to the statute or pursuant to <u>Nelson</u>, can the court limit the refund to $40 by redistributing $50 of the victim witness fee to the surviving judgment on the misdemeanor offense of unlicensed operation in violation of G. L. c. 90, § 10? G. L. c. 258B, § 8 ($90 victim witness assessment for felonies; $50 victim witness assessment for misdemeanors); <u>Commonwealth</u> v. <u>Zawatsky</u>, 41 Mass. App. Ct. 392, 401 (1996) (remanding to discretion of trial judge whether $600 of victim witness assessment lost in connection with the vacated civil rights counts should be distributed among the surviving judgments of conviction)."

(4) "Does <u>Nelson</u> . . . require refunding payments assessed pursuant to G. L. c. 276, § 87A? If so, what is the showing a defendant must make to be entitled to a refund of such payments, and from what source should this payment be refunded?"

(5) "What verification is needed to determine the amount to be refunded?"

(6) "Does <u>Nelson</u> . . . require refunding restitution? If so, what is the showing a defendant must make to be entitled to a refund of this payment, and from what source should restitution payments be refunded?"

(7) "What verification is needed to determine the amount to be refunded?"

a victim-witness assessment of fifty dollars.[6]  The judge at sentencing also allowed the Commonwealth's motion for the forfeiture of $1,411.63 seized from Green's home during the search.

That same day, before the same judge, Green was sentenced on four other drug-related counts arising from a complaint that had been filed after a search warrant had been executed at Green's hotel room on September 14, 2007.  On counts one and two, Green was sentenced to one year in a house of correction, suspended for two years, with two years of supervised probation.  She also was ordered to pay fines totaling $4,000 and surfines totaling $1,000.  On count one, Green was further ordered to pay a victim-witness assessment of fifty dollars.  On count four, she was placed on probation for two years.  On count seven, she

---

[6] We note that the judge ordered Green to pay a victim-witness assessment of fifty dollars on the count in the complaint charging possession of a class B substance with intent to distribute, in violation of G. L. c. 94C, § 32A (a), but a different judge ordered Martinez to pay a victim-witness assessment of ninety dollars on a count charging possession of a class A substance with intent to distribute, in violation of G. L. c. 94C, § 32 (a).  Both are felonies within the jurisdiction of the District Court, see G. L. c. 218, § 26, although a defendant whose case is adjudicated in District Court may not be sentenced to State prison.  See G. L. c. 218, § 27.  Under G. L. c. 258B, § 8, where a defendant is convicted of a felony, a judge "shall impose an assessment of no less than $90"; where a defendant is convicted of a misdemeanor, a judge "shall impose an assessment of $50."  We do not address the differences in these cases in the application of G. L. c. 258B, § 8.

was sentenced to a term of thirty days in a house of correction, to be served on weekends.

On April 19, 2017, Green's convictions were vacated and dismissed with prejudice pursuant to the single justice's order arising from Bridgeman II.  Green then moved for a refund of the $8,071.63 she had paid after being sentenced on the drug convictions arising from the two complaints: $1,411.63 in forfeited cash, $1,560 in probation fees, one hundred dollars in victim-witness assessments, and $5,000 in fines and surfines.[7] The judge, without ruling on the motion, reported the matter and three questions of law to the Appeals Court pursuant to Mass. R. Crim. P. 34.[8]  We transferred the case to this court on our own

---

[7] On December 3, 2008, the Commonwealth commenced a civil action in Superior Court seeking forfeiture of the items seized in the execution of the hotel room search warrant:  $8,214 in cash, three cellular telephones, and a laptop computer. Judgment issued on July 22, 2009, ordering the forfeiture of these items to the Commonwealth.  Green has not sought the return of these items.

[8] The judge was aware that questions had earlier been reported in Martinez's case, and supplemented those questions with reported questions addressing additional issues raised in Green's case "as to the procedure to be followed for return of punitive fines imposed and what, if any, obligation the Commonwealth has to return money ordered forfeited."  The reported questions are:

motion, and now consider the reported questions in conjunction with those reported in Martinez's case.

For the sake of providing clear and simple guidance to trial courts and litigants regarding the scope and application of the due process obligation announced in Nelson, we have exercised our authority to reformulate the reported questions into three more general questions. See Commonwealth v. Eldred, 480 Mass. 90, 93-94 (2018) (reformulating reported question to make it answerable on existing record); Tedford v. Massachusetts Hous. Fin. Agency, 390 Mass. 688, 692-693 (1984) (summarizing reported questions). See also McStowe v. Bornstein, 377 Mass. 804, 805 n.2 (1979) ("[r]eported questions need not be answered

---

(1) "Who is the proper party to be named in a defendant's motion to return money assessments that are dependent on a conviction that was subsequently invalidated? Is designation of the proper party dependent on the type of monetary assessment sought to be refunded? In what [c]ourt should such a motion be filed, and what, if any, entities other than the District Attorney's office should receive notice of such a motion?"

(2) "What is the showing a defendant must make to be entitled to a refund of punitive fines imposed upon a conviction that has subsequently been invalidated, and from what source should punitive fines be refunded?"

(3) "Does Nelson . . . require refunding money that was ordered forfeited by the criminal court pursuant to G. L. c. 94C, § 47 (b), where the conviction in the related criminal proceeding is subsequently invalidated and no retrial will occur? If so, what is the showing a defendant must make to be entitled to a refund of such forfeited moneys, and from what source would such a refund be paid?"

. . . except to the extent that it is necessary to do so in resolving the basic issue").  The questions are:

> 1.  What is the scope of the due process obligation to refund money paid by a defendant "upon, and as a consequence of" a conviction that has been invalidated? Nelson, 137 S. Ct. at 1252.

> 2.  What is the procedure to be used to determine a defendant's entitlement to a refund and the amount to be refunded, and who bears the burden of proof?

> 3.  Where a judge determines that a defendant is entitled to a refund, how will payment of the refund be accomplished?

Discussion.  Before we address these questions, it is important to understand the context and reasoning of the Supreme Court's opinion in Nelson.  There, two defendants were convicted of various crimes and ordered to pay court costs and fees, which went to two funds -- a "victim compensation fund" and a "victims and witnesses assistance and law enforcement fund."  Nelson, 137 S. Ct. at 1253 nn.1, 2.  In addition, the defendants were ordered to pay restitution to the victims of their crimes.  Id. at 1253.  See People v. Madden, 364 P.3d 866, 867-868 (Colo. 2015); People v. Nelson, 362 P.3d 1070, 1073 (Colo. 2015).  All

counts of their convictions were later invalidated.[9] Nelson, supra at 1258.

The defendants then moved for the return of the court costs, fees, and restitution they had paid. Id. at 1253. The Supreme Court of Colorado held that such a refund could be ordered only with statutory authority, and that the exclusive process for exonerated defendants to seek such a refund was through the Compensation for Certain Exonerated Persons act, a Colorado law allowing defendants whose convictions had been invalidated to receive a refund of fines, penalties, costs, and restitution only after they proved their innocence by clear and convincing evidence in a separate civil proceeding. Nelson, 137 S. Ct. at 1254.

The United States Supreme Court reversed the judgment, holding that a scheme whereby "a defendant must prove [his or] her innocence by clear and convincing evidence to obtain the refund of costs, fees, and restitution paid pursuant to an invalid conviction . . . does not comport with due process." Id. at 1255. The Supreme Court evaluated the defendants' due process claims under the balancing test established in Mathews

---

[9] One defendant's conviction was reversed on appeal for trial error, and she was acquitted of all charges on retrial. Nelson, 137 S. Ct. at 1253. The other defendant's conviction on one count was reversed on appeal, and his conviction on the other count was vacated on collateral review. Id. The State chose not to appeal or to retry the case. Id.

v. Eldridge, 424 U.S. 319, 335 (1976), which requires courts to weigh (1) the private interests affected; (2) the risk that the procedures used will result in erroneous deprivation of those interests; and (3) the governmental interests. Nelson, 137 S. Ct. at 1255. The Supreme Court held that all three factors weighed "decisively" in favor of the defendants. Id.

As to the first factor in the balancing test, the Court stated that there was an "obvious interest" in a refund of money paid as a consequence of convictions that were no longer valid. Id. An overturned conviction restores the presumption of innocence, the Court said, erasing any State claim to funds paid in the form of costs, fees, or restitution. Id. at 1255-56.

As to the second factor, the Court declared that the act's requirement that defendants prove their innocence by clear and convincing evidence created a risk of erroneous deprivation of the defendants' interest in a refund of their money. Id. at 1256. Once the presumption of innocence is restored, "defendants should not be saddled with any proof burden." Id.

As to the third factor, the Court stated that Colorado had "zero claim of right" to money paid solely as a consequence of subsequently invalidated convictions. Id. at 1257.

Under the Court's holding in Nelson, id. at 1252, the State is obligated under the due process clause of the Fourteenth Amendment to refund monies where three elements are satisfied:

(1) the monies were "exacted from the defendant" upon conviction and as a consequence of the conviction; (2) the amounts "exacted" were actually paid by the defendant; and (3) the conviction has been "invalidated by a reviewing court and no retrial will occur."  We understand that this third element is met where, for example, the conviction was vacated, whether by an appellate court or a trial court, and the indictment or count was subsequently dismissed with prejudice or nol prossed by the prosecutor, or was retried and resulted in an acquittal.  In addition, "[t]o comport with due process, a State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated."  Id. at 1258.  Because the refund obligation is constitutional, it applies even where there is no statutory authority for the refund of fines, fees, court costs, or restitution to a defendant whose conviction was invalidated.  Cf. Commonwealth v. Martin, 476 Mass. 72, 79 (2016).  The overriding principle is that where a defendant has been ordered to make a payment because of a conviction, the invalidation of that conviction erases the State's claim to that payment, and any amount paid must be restored to the defendant as a matter of due process. Although the Supreme Court speaks only of a "conviction," we understand a "conviction" in light of this due process principle to include continuances without a finding and juvenile

adjudications. Cf. Committee for Pub. Counsel Servs. v. Attorney Gen., 480 Mass. 700, 734-735 (2018) (defining class of "Farak defendants" to include defendants who pleaded guilty to drug charge, admitted to sufficient facts to warrant finding of guilty on drug charge, or were found guilty of drug charge at trial); Bridgeman II, 476 Mass. at 306 (providing comparable definition for "relevant Dookhan defendants").

We now address each of the reformulated reported questions.

1. What is the scope of the due process obligation to refund money paid by a defendant "upon, and as a consequence of" a conviction that has been invalidated? a. Probation fees. Where a judge sentences a defendant to probation on a single conviction, monthly probation fees ordered under G. L. c. 276, § 87A, are paid by the defendant as a direct consequence of that conviction. Therefore, any amount paid by the defendant is "taken from [him or] her solely on the basis of a conviction," Nelson, 137 S. Ct. at 1257, and must be returned in full once the conviction is invalidated and it is determined that the case will not or cannot be retried. Id. at 1252.

Where a judge, however, sentences a defendant to a concurrent term of probation on multiple convictions, the probation fees must be refunded to the defendant only where they were paid solely because of an invalidated conviction. Where the defendant was sentenced to a concurrent term of probation on

a conviction that remains valid, due process does not require that the probation fees paid during that concurrent term be refunded, because the obligation to pay monthly probation fees associated with a valid conviction is unaffected by the subsequent invalidation of a different conviction. For example, if a defendant were convicted of a drug count and a firearms count and sentenced to two years of supervised probation on the drug count and one year of supervised probation on the firearms count, to be served concurrently, subsequent invalidation of the drug conviction would have no impact on the defendant's obligation to pay probation fees in the first year on the firearms conviction. Because the defendant is entitled to a refund of only those fees paid as a direct consequence of the invalidated drug conviction, he or she would receive a refund of probation fees paid during the second but not the first year of probation. Due process requires the refund of fees paid for an invalidated conviction, but it does not require that a defendant be placed in a better position because of an invalidated conviction than the defendant would have been in had he or she been sentenced on only the surviving convictions.

Here, all of the counts for which both defendants were sentenced to probation have been invalidated. As a result, all paid probation fees must be refunded because they were paid solely as a consequence of those invalidated convictions.

b.  Victim-witness assessments.  As with probation fees, where a defendant is sentenced on a single conviction, the victim-witness assessment ordered under G. L. c. 258B, § 8, is exacted from the defendant solely as a consequence of that conviction.  Any amount paid must therefore be returned where the conviction is invalidated and it is determined that the case will not or cannot be retried.  But where a defendant is sentenced on multiple indictments or counts of a complaint, due process does not require the refund of a victim-witness assessment imposed on an invalidated conviction where a surviving conviction also would have required the imposition of a victim-witness assessment under G. L. c. 258B, § 8.

As applied here, all of Green's convictions have been invalidated, so she is entitled to a refund of the victim-witness assessments paid as a consequence of those convictions.

In contrast, Martinez's drug convictions were invalidated, but his conviction of unlicensed operation of a motor vehicle was not.  Had Martinez been convicted of only the latter, a misdemeanor, the judge would have been required to impose a victim-witness assessment of fifty dollars.  See G. L. c. 258B, § 8.  Presumably, this assessment was not ordered at sentencing only because the defendant had already been ordered to pay a victim-witness assessment of ninety dollars on one of his felony drug convictions.  Martinez is therefore entitled to a refund

in the amount of forty dollars, the difference between the amount he paid (ninety dollars) and the amount he would have paid if not for the invalidated felony convictions (fifty dollars).  A full refund of the ninety dollars would place the defendant in a better position than he would have been in had he originally been convicted of only the surviving count.

   c.  Restitution.  Due process requires the refund of restitution paid as a consequence of an invalidated conviction, see Nelson, 137 S. Ct. at 1252, but the refund of restitution poses two complex issues that generally do not arise with the refund of fees.

   First, fees are generally paid solely as a consequence of a conviction and present no opportunity to obtain a civil judgment for their award.  But restitution may be ordered as a special condition of probation in a criminal sentence, see Commonwealth v. Henry, 475 Mass. 117, 120 (2016), or obtained by the victim through an execution on a separate civil judgment, see id. at 122 n.5; Mass. R. Civ. P. 69, 365 Mass. 836 (1974).

   The Supreme Court noted in Nelson, 137 S. Ct. at 1253 n.3, that "[u]nder Colorado law, a restitution order tied to a criminal conviction is rendered as a separate civil judgment," and that, "[i]f the conviction is reversed, any restitution order dependent on that conviction is simultaneously vacated." See People v. Scearce, 87 P.3d 228, 234-235 (Colo. App. 2003).

In contrast, under Massachusetts law, there is no statutory authority that permits a restitution order issued by a judge in a criminal case to be enforced through a separate civil judgment; a victim seeking a civil judgment against the defendant must initiate a separate civil action for restitution damages. See Henry, 475 Mass. at 121, 123 (restitution may be ordered in criminal case only as condition of probation, and probation is not "a civil program or sanction" [citation omitted]); id. at 122 n.5 (victims may collect on civil judgments for restitution through civil executions). See also G. L. c. 258B, § 3 (u). And, once a victim obtains such a civil judgment, the invalidation of the criminal conviction does not automatically result in the civil judgment being vacated. Instead, a defendant seeking to vacate a civil judgment in light of an invalidated criminal conviction must move separately for relief from that judgment under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), which allows for relief in circumstances where "a prior judgment upon which [an order] is based has been reversed or otherwise vacated."

Where a defendant moves for such relief, the motion judge must determine whether the civil judgment can stand despite the invalidation of the criminal conviction. In contrast with a criminal conviction, which requires proof beyond a reasonable

doubt,[10] a civil judgment requires proof only by a preponderance of the evidence, see Baker v. Parsons, 434 Mass. 543, 554 n.18 (2001), and that proof may be obtained through evidence separate and apart from the fact of conviction. In fact, under Massachusetts law, a civil judgment may be obtained through collateral estoppel (also known as issue preclusion) based on a criminal conviction only where the defendant has been found guilty at trial; admissions made by a defendant during a guilty plea colloquy do not trigger collateral estoppel, although they may be admitted in evidence in the civil case. Aetna Cas. & Sur. Co. v. Niziolek, 395 Mass. 737, 742, 748-750 (1985). See also Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 364 (2011) (where "a criminal conviction follows a guilty plea, the plea may be offered as evidence of a defendant's guilt in subsequent civil litigation but it is not given preclusive effect.").

In Nelson, 137 S. Ct. at 1252, 1253 n.3, the Supreme Court held that the defendants were entitled to a refund of restitution that had been the subject of civil judgments associated with criminal convictions. Under Colorado law, the Court said, such civil judgments are "simultaneously vacated"

---

[10] A criminal conviction requires proof beyond a reasonable doubt, but restitution may be awarded as a condition of probation where the victim's economic loss is proved by a preponderance of the evidence. McIntyre, 436 Mass. at 834.

when the underlying convictions are reversed. Id. at 1253 n.3. Because Martinez's restitution order was not tied to a civil judgment, we need not address here whether due process requires the refund of restitution related to an invalidated conviction where there is a surviving civil judgment. Moreover, the issue has been rendered moot by the refund of his restitution payment.

Second, in contrast with fees, which in Massachusetts are paid to the Commonwealth, see G. L. c. 29A, § 3, restitution is paid to the victims of crimes, who are often individuals or private entities. The Supreme Court in Nelson, 137 S. Ct. at 1252, concluded that the State is obliged to refund restitution exacted from the defendant as a consequence of his or her invalidated conviction. But the Court also appeared to assume that the restitution was paid to the State, and not to a private victim. See id. at 1255 (defendants "have an obvious interest in regaining the money they paid to Colorado"); id. at 1256 ("Colorado may not retain funds taken from [the defendants] solely because of their now-invalidated convictions"); id. at 1257 (defendants "seek restoration of funds they paid to the State"). This assumption might have been unwarranted because in Colorado, where "the obligation to pay restitution is included in the defendant's sentence, restitution results in a final civil judgment against the defendant in favor of the State and the victim." Id. at 1262 (Alito, J., concurring in the

judgment), citing Colo. Rev. Stat. § 18-1.3-603(4)(a)(I) (2016).
In fact, the restitution paid by both Nelson defendants was used
to pay for mental health therapy and counselling for the victim
children.  See Madden, 364 P.3d at 867-68 (defendant was ordered
to pay $910 in restitution to victim and actually paid $757.75,
which went to counselling services); Nelson, 362 P.3d at 1071 &
n.1 (defendant was ordered to pay $7,845 to victims as
restitution and actually paid $414.60).

Because the restitution here was paid to the Haverhill
police department and has been repaid, we need not decide
whether Nelson requires the Commonwealth to refund restitution
paid by a defendant as a consequence of an invalidated
conviction where the restitution was paid not to the
Commonwealth, but to a private victim.  We certainly expect the
Commonwealth and any other governmental entity to refund
restitution paid to it as a consequence of a conviction where
the conviction is later invalidated.  But we recognize that it
is another matter to order the Commonwealth to repay a defendant
for restitution that the Commonwealth never received because
that restitution was paid to a private victim.  We also
recognize the challenges involved if a court were to order
private victims to repay restitution that had perhaps been
received by them years earlier.  A victim is not a party to a
criminal proceeding and, if faced with the prospect of having to

repay restitution, might wish to initiate a civil proceeding against the defendant to obtain a civil judgment for that restitution amount. Does a judge postpone the order of refund to give the victim a reasonable opportunity to pursue that remedy? And what happens if the victim no longer has the ability to repay the restitution amount, or is financially able but unwilling to repay? We need not address these issues because they are not presented in these cases, but it may not be long before we confront a case that demands their resolution.

d. Fines. Green seeks a refund of the $5,000 in fines and surfines paid as part of her sentence on two invalidated drug convictions. Although the refund of fines was not at issue in Nelson, Green claims that she is entitled to a refund under the due process principles established in Nelson because her drug convictions have been invalidated and the fines were exacted from her upon and as a consequence of those convictions. We agree that there is no reason to exclude fines and surfines from the category of payments that must be refunded to a defendant as a matter of due process where the defendant was ordered to pay those fines and surfines solely as a consequence of a subsequently invalidated conviction. See Commonwealth v. Accime, 476 Mass. 469, 477 & n.13 (2017) (where conviction is vacated, "defendant may be entitled to a refund of any fine he

may have paid").  Green is therefore entitled to a refund of fines and surfines totaling $5,000.

e.  Forfeiture.  Green also seeks a refund of $1,411.63, the amount of money seized from her home during the execution of the search warrant and ordered forfeited at her plea hearing. Although forfeiture was not at issue in Nelson and was not mentioned in the opinion, Green claims that she is entitled to a refund of the forfeited funds under the due process principles established in Nelson.

We conclude that Green is not entitled to return of the forfeited funds because forfeiture, even where ordered at a plea hearing, "is outside the scope of the criminal matter and constitutes a civil proceeding."  Commonwealth v. Brown, 426 Mass. 475, 480 (1998).  The forfeiture of property is authorized by G. L. c. 94C, § 47, which sets forth two methods by which forfeiture proceedings may be initiated by the Commonwealth: either by petition in the nature of a proceeding in rem filed in the Superior Court under § 47 (d), or by motion filed in a related criminal proceeding under § 47 (b).  See Brown, supra. Regardless of which type of proceeding is chosen by the Commonwealth, the burden of proof remains the same:  "the [C]ommonwealth shall have the burden of proving to the court the existence of probable cause to institute the [forfeiture] action, and [the] claimant shall then have the burden of proving

that the property is not forfeitable."  Id. at 477 & n.3, quoting G. L. c. 94C, § 47 (d).

Here, the Commonwealth sought the forfeiture of the $1,411.63 seized from Green's home under § 47 (b) by a motion in the criminal proceeding.[11]  Under such circumstances, probable cause for the forfeiture may be shown from the same facts the prosecutor presented as the factual basis for the defendant's guilty plea.  See id. at 477-478.  The Commonwealth satisfies its initial burden, and thus shifts the burden of proof to the defendant, by showing that "the Commonwealth had reliable information in its possession that established probable cause" to believe that "the property at issue derived from illegal narcotics or facilitated a violation of the controlled substances laws."  Commonwealth v. One 2004 Audi Sedan Auto., 456 Mass. 34, 38-39 (2010).  The Commonwealth may make this showing of nexus even where it lacks a sufficient factual basis to support a finding of guilt, or where a defendant is found not guilty at trial, or where the Commonwealth later dismisses or nol prosses the criminal complaint or indictment.  See Commonwealth v. Fourteen Thousand Two Hundred Dollars, 421 Mass.

_____

[11] As noted earlier, see note 7, supra, the Commonwealth obtained the forfeiture of the monies, cellular telephones, and laptop computer seized from Green's hotel room through a proceeding in rem filed in the Superior Court under § 47 (d), and Green does not seek the refund of that forfeited property.

1, 9 (1995); Commonwealth v. One 1986 Volkswagen GTI Auto., 417 Mass. 369, 370 n.2 (1994).

Green contends that the forfeiture order, for all practical purposes, was a consequence of the invalidated drug convictions and should therefore be invalidated along with the convictions. But the motion for forfeiture of Green's money under § 47 (b), as a matter of law, initiated a separate civil proceeding that was adjudicated at the same time as the criminal proceeding. See Brown, 426 Mass. at 480. The finding of probable cause of nexus that sufficed to order forfeiture in the civil proceeding did not depend on the finding in the criminal proceeding of sufficient evidence to warrant a finding of guilt on the plea. See Fourteen Thousand Two Hundred Dollars, 421 Mass. at 9. The forfeiture judgment therefore was not solely a consequence of the invalidated drug convictions, and need not be vacated because of their invalidation. To be sure, the reasons for invalidating a conviction potentially may warrant relief from the civil judgment of forfeiture, but that issue must be separately litigated in the civil forfeiture proceeding through a motion for relief from judgment under Mass. R. Civ. P. 60 (b). A defendant is not entitled to such relief solely because the criminal convictions that were related to the forfeiture were invalidated. Green, therefore, is not entitled as a matter of

due process to a refund of the $1,411.63 taken in forfeiture solely because her drug convictions were invalidated.

f. Court costs. Although court costs were not imposed in these cases, we address the issue because their refund is specifically required under Nelson, 137 S. Ct. at 1252. In Massachusetts, "[c]osts shall not be imposed by a justice as a penalty for a crime." G. L. c. 280, § 6.[12] Because Nelson, 137 S. Ct. at 1252, requires the refund of only those costs exacted from the defendant "upon, and as a consequence of, the conviction," and because § 6 prohibits court costs from being ordered as a consequence of conviction, the due process obligation set forth in the Nelson decision should not affect court costs assessed in Massachusetts. The due process obligation to refund would apply to court costs only where, in apparent violation of § 6, a defendant was ordered to pay court costs as a consequence of a conviction that was later invalidated.

---

[12] General Laws c. 280, § 6, also provides:

"A justice may, as a condition of the dismissal or placing on file of a complaint or indictment, or as a term of probation, order the defendant to pay the reasonable and actual expenses of the prosecution. A justice may impose reasonable costs as a result of a default by a criminal defendant that was intentional or negligent and without good cause."

We recognize that the exactions discussed above are not the only ones that can issue as the result of a conviction. See, e.g., G. L. c. 90, § 24 (assessments and fees in cases of operating motor vehicle while under influence); G. L. c. 258B, § 8 (domestic violence prevention assessments); G. L. c. 280, § 6B (drug analysis fees). Because questions regarding other fines and fees are not presented in these two cases and were not at issue in Nelson, we do not address them here.

2. What is the procedure to be used to determine a defendant's entitlement to a refund and the amount to be refunded, and who bears the burden of proof? Whether a defendant has been ordered to pay fees, court costs, restitution, or fines as a consequence of an invalidated conviction is a question whose answer should be found in the case docket. But it is often difficult and potentially time-consuming to determine whether those exactions have actually been paid by the defendant -- that information might not be in the docket, especially in older cases, and might require review of the case file or the probation file. It might be similarly challenging to determine whether a defendant with an invalidated conviction has surviving convictions that require the court to reassign money paid to those convictions rather than to refund it. Therefore, the allocation of the burdens of production and proof matters a great deal in determining whether defendants

whose convictions have been invalidated will be able to successfully establish their entitlement to a refund of amounts paid.

The Supreme Court in Nelson, 137 S. Ct. at 1258, held that "[t]o comport with due process, a State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." Although the Court clearly stated that requiring a defendant to prove his or her innocence to obtain a refund violates due process, id. at 1256, the Court did not provide any further guidance as to what was meant by "no more than minimal procedures." Id. at 1258.

We now outline the procedure to be followed in cases where the defendant applies for a refund of monies paid as a direct consequence of a conviction that has been invalidated. We set forth this procedural guidance under the due process protections implicit in art. 12 of the Massachusetts Declaration of Rights. We are confident that the procedural guidance we provide satisfies the due process clause of the Fourteenth Amendment, but we rely on art. 12 to ensure that this process is followed in Massachusetts courts even if the Supreme Court were to declare that procedures that place greater demands or obligations on defendants seeking refunds are acceptable under the Fourteenth Amendment.

First, a defendant seeking a refund must file a motion for refund in the court where he or she was convicted and mail to or otherwise serve this motion on the office that prosecuted the conviction, that is, the office of the Attorney General or the district attorney's office. The motion may be filed by the defendant or by defense counsel. If the defendant is filing the motion pro se but was represented by an attorney in the underlying criminal case, a copy of the motion should be sent to the defense attorney. The defendant must swear or attest that the information provided in support of the motion is true, based on personal knowledge or information and belief. This may be accomplished by submitting a verified motion, that is, a motion where the information contained within is sworn or attested, or by submitting with the motion an affidavit in the form of a sworn or attested statement, letter, or application. This verified motion or accompanying affidavit must clearly state (1) that the defendant's conviction is no longer valid and is not subject to retrial; (2) that the requested refund consists of fines, fees, costs, or restitution assessed solely as a result of the invalidated conviction; (3) the amount of the requested refund; and (4) that the defendant has paid the requested amount.[13]

---

[13] We urge the Trial Court to prepare a simple, plain language "Motion for Refund after Invalidated Conviction" form

The sworn or attested application alone is sufficient to satisfy the defendant's burden of production. But, if possible, the defendant should identify any docket entries reflecting his or her payment of monies, and supplement his or her application with any other existing evidence (e.g., receipts or payment documents) that the defendant reasonably can locate that tend to support the refund claim.

Once the defendant has met his or her burden of production, the burden of proof shifts to the Commonwealth. At this point, the Commonwealth may rebut the defendant's claims by producing evidence that the defendant is not entitled to a refund or is entitled to a refund in an amount that differs from what he or she requested. The Commonwealth, like the defendant, may present evidence in the form of docket entries, receipts, and anything else relevant to determine whether the defendant actually paid the amount claimed.

We place the burden of proof on the Commonwealth rather than the defendant because doing so comports most closely with the spirit of the Supreme Court's admonition to impose nothing "more than minimal procedures on the refund of exactions" arising from invalidated convictions. Nelson, 137 S. Ct. at

---

that would simplify the process of applying for a refund by defendants who may not have the benefit of counsel when they file such an application.

1258.  The defendants who file such motions will often be representing themselves, at least initially, and their invalidated convictions may be many years old, as with Martinez and Green.  Although criminal files are public records and defendants may gain access to them, they are more easily accessible to prosecutors who are in the court house of conviction every day.  Prosecutors also will generally be better able than defendants to understand docket notations that, especially in older cases, often are handwritten and too often are something less than a model of clarity.  Moreover, records of payment may sometimes be found in places other than the court file, such as in probation files or clerk's office files.  Prosecutors are better positioned than defendants to know where to find these records and to obtain the cooperation needed to search them.

Where the refund or its amount is disputed, the court shall consider the evidence offered by both parties and determine whether the Commonwealth has met its burden to show, by a preponderance of the evidence, that the defendant is not entitled to the refund amount requested in his or her motion. The court, in its discretion, may conduct an evidentiary hearing to resolve such disputes.  If the court finds that a refund in any amount is proper, it shall issue a refund order pursuant to the procedure described infra.

3.   Where a judge determines that a defendant is entitled to a refund, how will payment of the refund be accomplished? Under G. L. c. 258B, § 8, where a conviction or delinquency adjudication is "overturned on appeal," the victim-witness assessment paid by the defendant or juvenile "shall be refunded by the court" by deducting the funds "from the assessments transmitted to the state treasurer."  Green contends that this protocol should govern not only the refund of victim-witness assessments in cases where the conviction or adjudication is overturned on appeal, but the refund of all fines, fees, and court costs required as a matter of due process.  This protocol is certainly consistent with the Supreme Court's holding in Nelson, but there are practical problems with adopting it beyond the statutory mandate.

Fines, fees, victim-witness assessments, and court costs are collected by the trial court or the probation service but are not retained by them.  All such funds are paid to the Commonwealth and, with some exceptions,[14] are deposited into the general fund.  See G. L. c. 29A, § 3 ("All fees, fines,

_____

[14] See, e.g., G. L. c. 258B, § 8 (domestic violence prevention assessment deposited into fund for domestic and sexual violence prevention and victim assistance); G. L. c. 90, § 24 (1) (a) (1) (operating motor vehicle while under influence victim assessment given in part to trust fund for victims of drunk driving; operating motor vehicle while under influence head injury assessment deposited in part into trust fund for head injury treatment services).

forfeitures, penalties and any other receipts or income of any kind paid to or received by any of the courts . . . shall be paid into the general fund of the [C]ommonwealth except as otherwise specifically provided by law."). General Laws c. 258B, § 8, provides that all victim-witness "assessments . . . shall be transmitted monthly to the state treasurer." However, the probation service reports that this transfer of funds now happens daily. Therefore, the ability of the courts to refund fines, fees, and court costs by deducting funds "from the assessments transmitted to the state treasurer" is quite limited.

But the basic elements of this protocol still apply. It continues to be the responsibility of the courts to order the refund of fines, fees, and court costs where due process so requires. And the source of payment for such refunds continues to be the Commonwealth, generally its general fund. We will not attempt to specify the means by which such payment is accomplished; it suffices to say that the court must order the refund and the Commonwealth must timely comply with that order by providing the defendant or juvenile with the money to which he or she is entitled.

The refund of restitution, however, requires a different protocol because restitution payments are made to the victim of the defendant's crimes, not to the Commonwealth. In contrast

with refunds of fines, fees, victim-witness assessments, and court costs, where the Commonwealth is returning funds to which it is no longer entitled, the Commonwealth was never entitled to payments issued as restitution to private victims.  Where the Commonwealth, or any other governmental entity, was itself the victim of a crime and received restitution, a judge may order the Commonwealth or the governmental entity to refund the amount paid, and we expect that order to be honored.  But we do not address how a court may accomplish the refund of restitution paid to a private person or entity.  We will await an appeal of a case where restitution was paid to a private victim as a consequence of an invalidated conviction to decide that difficult issue.

　　4.  The exercise of our superintendence authority.  The recognition in Nelson of a constitutional due process obligation to refund fees, court costs, and restitution paid as a consequence of an invalidated conviction comes at a challenging time for the Commonwealth.  Drug convictions in more than 21,000 cases have been invalidated as a result of the misconduct of Annie Dookhan at the Hinton laboratory, and drug convictions in thousands of other cases have been invalidated as a result of the misconduct of Sonja Farak at the Amherst laboratory, with even more to be invalidated as a result of our opinion in

Committee for Pub. Counsel Servs. v. Attorney Gen., 480 Mass. 700, 729, 735 (2018).

The procedure we establish here for the refund of fines and fees in individual cases is practicable in ordinary times, but we recognize that it would quickly prove impracticable if a sizeable percentage of the defendants whose convictions have been invalidated because of Dookhan and Farak's misconduct were to seek the refunds they are due. If that were to happen, the amount of time and effort required from judges, clerks, probation officers, prosecutors, and defense counsel to adjudicate each individual defendant's entitlement to a refund, and the amount of such a refund, would pose so substantial a collective burden that it would threaten the administration of criminal justice in our courts.

In Bridgeman II, 476 Mass. at 300, we exercised our superintendence authority under G. L. c. 211, § 3, to fashion a remedy for the resolution of thousands of drug cases affected by Dookhan's misconduct through a "new protocol for case-by-case adjudication" that occurred in three phases and was implemented by the single justice in the form of a declaratory judgment. In Committee for Pub. Counsel Servs. v. Attorney Gen., 480 Mass. at 705, 735, we fashioned a more global remedy under our superintendence authority to resolve thousands of drug cases affected by Farak's misconduct and by the subsequent

prosecutorial misconduct of two attorneys in the office of the Attorney General: we vacated the drug convictions of the so-called Farak defendants and dismissed the drug charges against them with prejudice.

We have given careful consideration to whether we need to exercise our superintendence authority to craft another global remedy addressing the many thousands of "Nelson" refund motions that may be brought by the so-called Dookhan and Farak defendants. The parties at oral argument, however, have asked us to refrain from doing so pending the anticipated settlement of a putative class action brought in the United States District Court for the District of Massachusetts that seeks, among other things, the refund of fines, fees, court costs, and restitution paid as a result of invalidated drug convictions by the putative class of Dookhan and Farak defendants. Foster vs. Commonwealth of Mass., U.S. Dist. Ct., Civ. No. 18-10354-IT (D. Mass., filed Feb. 23, 2018, amended Sept. 6, 2018).

We will defer, for now, to allow time for a global remedy to be crafted and for a settlement to be reached by the parties to that litigation. But we might not be able to defer for long because we recognize the possibility that the issuance of this opinion may unleash a flood of "Nelson" motions for the refund of monies paid by Dookhan and Farak defendants. Such an influx of motions might so burden our criminal courts as to imperil the

"proper and efficient administration" of justice.  See G. L. c. 211, § 3.  We therefore direct the Attorney General and the Committee for Public Counsel Services, no later than six months after the issuance of the opinion in this case, to report in writing to the single justice responsible for the implementation of the protocols established in Bridgeman II and Committee for Pub. Counsel Servs. v. Attorney Gen. regarding the status of the putative class action litigation.  Nothing bars this court from exercising our superintendence authority before that date if deemed necessary to preserve the fair administration of justice.

Conclusion.  We remand the cases to the reporting courts for proceedings consistent with this opinion.

So ordered.