APPEALS COURT 
 
 COMMONWEALTH vs. ONE (1) CHECK IN THE AMOUNT OF $480.00 FOR 1,600 PIECES OF WILD OYSTERS (CRASSOSTREA VIRGINICA)[1]

 
 Docket:
 24-P-507
 
 
 Dates:
 March 4, 2025 – September 26, 2025
 
 
 Present:
 Desmond, Ditkoff, & Englander, JJ.
 
 
 County:
 Barnstable
 

 
 Keywords:
 Shellfish. Municipal Corporations, Shellfish. Division of Marine Fisheries. Wampanoag Tribal Council. Forfeiture Proceeding. Practice, Civil, Forfeiture proceeding, Summary judgment.
 
 

       Civil action commenced in the Falmouth
Division of the District Court Department on December 16, 2019. 
      The case was heard by Lisa F. Edmonds, J.,
on motions for summary judgment. 
      Jeffrey B. Loeb (Jonathan R. Loeb also
present) for Cheenulka Pocknett.
      Maryanne Reynolds, Assistant Attorney
General, for the Commonwealth.
      DITKOFF, J.  This case involves the civil forfeiture of
wild oysters pursuant to G. L. c. 130, § 12, and G. L.
c. 257, statutes that have not yet been applied in our published case
law.  The Commonwealth asserts that the
special, Commonwealth-favorable rules applicable to civil forfeiture of drugs apply
to such civil forfeitures.  We write to
dispel that notion, which is not supported by the statutory text.
      We consider whether the Commonwealth was
entitled to summary judgment, applying the usual rule that the plaintiff has
the burden to establish its case.  We
conclude that the Commonwealth met its burden where the record showed that the
fisherman affixed tags to the oysters with his commercial fisherman permit
number and sold those oysters to a licensed wholesaler prohibited by law from
buying oysters from anyone who was not a licensed commercial fisherman.  Accordingly, there was no genuine issue of
material fact concerning the capacity in which the fisherman was acting.  The summary judgment record establishes as a
matter of law that the fisherman was acting in his capacity as a commercial
fisherman, and not as a Native American exercising his right to fish for
sustenance.
      We also consider the fisherman's defense
that the civil forfeiture was barred by the fact that, after the oysters were
seized, the fisherman received a warning citation.  We conclude that an environmental police
officer who has properly seized wrongly taken fish need not impose a fine or
suspend the fisherman's commercial fishing license to proceed with civil
forfeiture of the seized fish. 
Accordingly, we affirm the order of the Appellate Division of the
District Court affirming the decree of forfeiture.
      1. 
Background.  The basic facts are
not in dispute.  The fisherman and
claimant, Cheenulka Pocknett, holds a valid commercial shellfishing permit
issued by the Division of Marine Fisheries (DMF).  He is also a member of the Mashpee Wampanoag
Tribe and, as such, has certain rights to fish for sustenance.  See Commonwealth v. Maxim, 429 Mass. 287,
289-292 (1999).
      On Wednesday, December 4, 2019, Pocknett
and a friend took a large number of wild oysters from Green Pond in
Falmouth.  Green Pond is closed to
commercial fishing on Wednesdays (as well as Sundays, Mondays, and Fridays).  See Chapter 275, Article II, § 15(D) of
the Code of Falmouth.[2]  See also
G. L. c. 130, § 52, par. 1 (authorizing municipalities to
regulate shellfish fisheries).[3] 
Pocknett kept some oysters for personal consumption; the Commonwealth
took no action regarding those oysters and appears to recognize Pocknett's
right to take oysters for personal consumption.[4]  Pocknett placed 1,600 oysters in containers
and affixed the containers with "DMF-required shellfish tags with [his]
name[], [his] DMF issued permit number, as well as the date, time and location
of the harvest." He then sold those oysters to Big Rock Oysters in
Harwich, a licensed wholesale shellfish dealer.
      The same day, the Falmouth harbormaster
contacted the Massachusetts Environmental Police to report unlawful
shellfishing in Green Pond.  The next
day, an environmental police officer went to Big Rock Oysters and inspected the
DMF shellfish tags that stated that the oysters were taken by Pocknett from
Green Pond on a Wednesday.  The officer
told Big Rock Oysters that it should not have accepted those oysters.  He instructed Big Rock Oysters to sell the
oysters but that the state would be seizing the proceeds.[5]  The officer then called Pocknett and orally
advised him of the seizure and that he would be filing an action in libel (the
term used in the statute).
      Three days later, the same officer issued
Pocknett a warning citation for possession of shellfish from an area closed to
commercial harvest, in violation of 322 Code Mass. Regs. § 16.09(2)
(2019).[6]
      On December 16, 2019, the officer filed a
complaint in libel in District Court for forfeiture of a check for $480, which
appears to be the wholesale proceeds of the oysters.  Pocknett promptly appeared as a claimant and
unsuccessfully moved to dismiss the complaint. 
On the parties' cross motions for summary judgment, a judge of the
District Court granted summary judgment to the Commonwealth and entered a
decree of forfeiture.
      Pocknett filed a timely notice of appeal
to the Appellate Division of the District Court.  The Appellate Division affirmed the
decree.  Pocknett then filed a timely
notice of appeal pursuant to G. L. c. 231, § 109.  This appeal followed.
      2. 
Actions in libel.  An
environmental police officer with "reasonable cause to believe, and [who]
does believe, that fish taken, held, kept, possessed, transported or held for
transportation or sale in violation of law" may search for such without a
warrant and "seize any such fish," as well as "any boat, vessel,
fish car, bag, box, locker, package, crate, any motor vehicle . . .
or any other personal property used in a violation of the laws relative to
marine fisheries and hold the same for forfeiture."  G. L. c. 130, § 9, par. 1.[7]  "All fish unlawfully taken, held,
possessed or dealt with contrary to" the marine fishery laws or regulations,
as well as "all boats, vehicles and apparatus used therein may, in
addition to any or all of the penalties contained therein, be seized, libelled
and forfeited to the commonwealth." 
G. L. c. 130, § 12, par. 1.  In the case of uncontaminated fish, the seized
fish may "be sold at private sale or public auction, and the net proceeds
of such sale may be libelled in the same manner and with the same effect as if
such proceeds were the property itself." 
G. L. c. 130, § 12, par. 2.  The statute explicitly states that the
procedures of G. L. c. 257 shall apply to such actions.  G. L. c. 130, § 12, par. 2.
      General Laws c. 257, in turn, applies
to "[p]roperty which has been forfeited for an offence" where
"no other provision is made." 
G. L. c. 257, § 1. 
Within fourteen days of the seizure, the person making the seizure must
"file a libel" in either Superior Court or District Court
"stating briefly the cause of the seizure without the details, and praying
for a decree of forfeiture." 
G. L. c. 257, § 2. 
The court then issues an order of notice.  G. L. c. 257, §§ 4-5.[8]
      "If a claimant appears, he may allege
and answer any matter material for his defence."  G. L. c. 257, § 6.[9]  If the libellant prevails, "the court
shall decree a forfeiture and sale of the property and a distribution of the
proceeds, or other appropriate disposition thereof."  G. L. c. 257, § 7.  If the claimant prevails, "the court
shall decree a restitution of the property to the claimant," G. L.
c. 257, § 7, and, if "the seizure was groundless," the
court shall award "reasonable damages" to the claimant, G. L.
c. 257, § 9.
      In the District Court and the Appellate
Division, the Commonwealth repeatedly asserted that the special civil
forfeiture provisions relating to drug forfeitures apply to libels under
G. L. c. 257, thus dramatically lowering the Commonwealth's burden of
proof.  Under G. L. c. 94C,
§ 47 (d), the Commonwealth seeking to forfeit proceeds or certain
instrumentalities of drug transactions need show only probable cause.  See Commonwealth v. Martinez, 480 Mass. 777,
790-791 (2018).  The "claimant shall
then have the burden of proving that the property is not forfeitable" or
that another exception applies. 
G. L. c. 94C, § 47 (d).  Accord Commonwealth v. One 2004 Audi Sedan
Auto., 456 Mass. 34, 37 (2010).
      By its own terms, G. L. c. 94C,
§ 47, applies only to controlled substances and certain items related to
the distribution or manufacture of controlled substances.  Its unusual burdens of proof and procedural
requirements apply only in that context. 
As the Supreme Judicial Court pointed out, c. 257 "is of long
standing and the Legislature could have referred to it in enacting c. 94C
in 1971, but did not."  Commonwealth
v. One 1976 Cadillac DeVille Auto., 380 Mass. 411, 418 (1980) (One 1976
Cadillac).  Moreover, "[t]he fact
that c. 94C has a number of procedural provisions at variance with those
of c. 257 makes it all the harder to justify the analogical attraction to
it of § 2 of c. 257."  One
1976 Cadillac, supra.  The Commonwealth-favorable
burdens of proof in G. L. c. 94C, § 47, have no place in
litigation pursuant to G. L. c. 257.
      Rather, we repair to the general rule that
the plaintiff, here the libellant, bears the burden to prove, by a
preponderance of the evidence, that the property is forfeitable.  See Fidalgo v. Columbus McKinnon Corp., 56
Mass. App. Ct. 176, 183 (2002). 
Presumably, the claimant bears the burden of proving any affirmative
defense by a preponderance of the evidence. 
See DeWeese-Boyd v. Gordon College, 487 Mass. 31, 43 (2021), cert.
denied, 142 S. Ct. 952 (2022).  With
this understanding, we proceed to Pocknett's challenges to the decree of
forfeiture.
      3. 
Warning citation.  Citing
G. L. c. 90C, § 2 (the "no-fix" statute), Pocknett
argues that the libel was barred by the warning citation issued by the
environmental police officer.  Under that
statute, a police officer must issue a citation for a motor vehicle violation
at the time and place of the violation. 
G. L. c. 90C, § 2, par. 4.  Failure to do so "shall constitute a
defense in any court proceeding for such violation," unless one of several
exceptions applies.  G. L.
c. 90C, § 2, par. 5.  Accord
Commonwealth v. Foley, 496 Mass. 320, 324 (2025); Commonwealth v. Ray, 95 Mass.
App. Ct. 848, 851 (2019).
      Consistent with the theme of this opinion,
the unusual citation procedures for motor vehicle violations cannot be imported
into the realm of marine fishery regulation. 
The "no-fix" statute does not reflect a generally applicable
concept of law, but rather reflects a particular legislative solution "to
replace the old system, where the decision whether to issue a warning was made
over a three-day period, because that created the 'opportunity for subsequent
maneuvering or pressure' in favor of the well connected."  Burlington Police Dep't v. Hagopian, 100
Mass. App. Ct. 720, 729 (2022), quoting Newton Police Ass'n v. Police Chief of
Newton, 63 Mass. App. Ct. 697, 699 (2005). 
It is a sui generis system, designed to correct a problem particular to
the enforcement of motor vehicle violations.
      Here, the officer seized the oysters and
then promptly called Pocknett to inform him that he had done so and that he
would be filing an action in libel. 
Three days later, he issued a warning citation, rather than suspending
Pocknett's fishing license, as authorized by 322 Code Mass. Regs.
§ 16.11(1), or imposing a fine of $50, as authorized by Chapter 275,
Article II, § 23(B) of the Code of Falmouth.  Nothing in that chain of events could have
led Pocknett reasonably to believe that the seizure would be undone.  Similarly, both G. L. c. 130,
§ 12, par. 1, governing the seizure and forfeiture of fish, and 322 Code
Mass. Regs. § 16.11(1) use the word "may," meaning that the
Commonwealth has the discretion to seize or suspend, or both (or neither), as
the circumstances dictate.  See
Cumberland Farms, Inc. v. Board of Health of Braintree, 495 Mass. 225, 235
(2025), quoting Commonwealth v. Dalton, 467 Mass. 555, 558 (2014) ("The
word 'may' reflects 'the Legislature's intent to grant discretion or
permission' and does not impose a mandate").  Similarly, whether to seek a civil fine is a
matter of "prosecutorial discretion [that] belongs to the executive branch
alone."  Commonwealth v. Kardas, 93
Mass. App. Ct. 620, 625 (2018).  We see
no reason why the officer could not choose to seize and forfeit the fish but
seek no other penalty against Pocknett.
      4. 
Forfeiture.  "We review a
grant of summary judgment de novo to determine 'whether, viewing the evidence
in the light most favorable to the nonmoving party, all material facts have
been established and the moving party is entitled to judgment as a matter of
law.'"  Mittas Early Learning, LLC
v. MDC Properties - Westford Rd, LLC, 104 Mass. App. Ct. 615, 617 (2024),
quoting Cottrell v. Laidley, 103 Mass. App. Ct. 483, 489 (2023).  Here, the Commonwealth had the burden of
showing that the oysters in question were "taken . . . [or] held
for . . . sale in violation of law."  G. L. c. 130, § 9.  Because the law in question is 322 Code Mass.
Regs. § 16.09, the Commonwealth had to show that the fish were taken by a
"[c]ommercial fisherman [who] harvest[ed] . . . from any growing
area, or part thereof, . . . that is not open to commercial
harvest."
      Because it is uncontested that the oysters
were taken from Green Pond on a Wednesday, that Green Pond was closed to
commercial fishing on Wednesdays, and that the oysters were sold to Big Rock
Oysters, the only remaining question is whether Pocknett was acting as a
commercial fisherman or instead exercising his rights as a member of the
Mashpee Wampanoag Tribe to fish for sustenance.
      In this regard, it is important to recall
that the Commonwealth did not seize the oysters that Pocknett kept for personal
consumption or to share with his friends and family.  Rather, the Commonwealth seized only the
oysters that Pocknett sold to Big Rock Oysters. 
Pocknett admits that he personally affixed DMF shellfish tags to these
oysters with his DMF commercial fisherman permit number.  As a licensed wholesaler, Big Rock Oysters
was required to obtain the fisherman's name and DMF number from any person who
sold it fish.  See 322 Code Mass. Regs.
§ 7.07(4)(b).  Furthermore, it could
not "accept any species of fish from persons not commercially permitted by
DMF."  322 Code Mass. Regs.
§ 7.07(5)(d).  In short, it was only
by acting as a commercial fisherman that Pocknett was able to sell the oysters
in question to Big Rock Oysters.  Accordingly,
there is no genuine issue of material fact and it is established as a matter of
law that Pocknett was acting as a licensed commercial fisherman in taking these
particular oysters and holding them for sale to Big Rock Oysters.  Summary judgment was properly granted to the
Commonwealth.  The decision and order of
the Appellate Division is affirmed.
So ordered.

footnotes

[1] Cheenulka
Pocknett, intervener.

[2] As the
Supreme Judicial Court has stated that the prior rule against taking judicial
notice of municipal bylaws is "a relic of another era," we take
judicial notice of Falmouth's bylaws. 
City Council of Springfield v. Mayor of Springfield, 489 Mass. 184, 190
n.6 (2022).  Accord Six Brothers, Inc.
v.  Brookline, 493 Mass. 616, 620 n.9
(2024).

[3] The town of
Falmouth created the Green Pond oyster fishery through aquaculture, and the
restrictions are presumably to prevent overfishing.

[4] Pocknett
asserts that he shared some of the oysters with friends and family, used some
shells for art and jewelry, and traded some for jewelry, food, and
gasoline.  If so, those oysters are also
not a part of this case.

[5] The officer
did the same with the oysters sold to Big Rock Oysters by Pocknett's
friend.  The friend did not appeal the
decree of forfeiture regarding the oysters he sold, and those oysters are not
before us.

[6] That
regulation makes it unlawful for a "[c]ommercial fisherman to harvest,
attempt to harvest, sell, or attempt to sell any shellfish from any growing
area, or part thereof, that is not open to commercial harvest by the [DMF] or
the municipality that regulates commercial harvest."  322 Code Mass. Regs. § 16.09(2)
(2019).  All citations to sections of
title 322 Code Mass. Regs. in this opinion are to the version in effect in 2019
when the events at issue occurred.

[7] The statute
defines "fish" as "any animal life inhabiting the ocean or its
connecting waters including any crustacean or marine fish, whether free
swimming or free moving, and any shellfish or sea worms, whether or not
imbedded in the soil."  G. L.
c. 130, § 1.

[8] The statutes
direct publication of the notice either in a newspaper in the county or by
posting it "in a public place," depending on whether the libel is in
Superior Court or District Court. 
G. L. c. 257, §§ 4-5. 
Here, notice was served at Pocknett's home by a deputy sheriff.  This is a wise practice when the claimant's
identity is known.

[9] Even if no
claimant appears, the court may order that the property be returned to its
owner if the libellant is unable to demonstrate that it should be
forfeited.  G. L. c. 257,
§ 6.